MARY J. BOWES *vs.* CITY OF BOSTON.

WILLIAM J. FEGAN *vs.* SAME.

WILLIAM J. FEGAN, administrator, *vs.* SAME.

SAME *vs.* SAME.

Suffolk.    November 18, 1891. — January 7, 1892.

Present: ALLEN, KNOWLTON, MORTON, & LATHROP, JJ.

*Defective Highway — Personal Injuries — Loss of Life — Actions by Administrator — Object frightening Horse — Proximate Cause.*

A notice, under the Pub. Sts. c. 52, § 18, stating that a person has been injured by a defect in a highway, the defect and cause of the injury being "large stones extending about six feet into the travelled part of said way, . . . piled within the travelled way in such grotesque and unusual shape that they constituted a nuisance by their liability to frighten horses," is insufficient to support an action for personal injuries caused by a collision with the pile of stones, in the absence of evidence, as required by the St. of 1882, c. 36, as amended by the St. of 1888, c. 114, in cases of defective notice, that there was no intention to mislead, and that the party entitled to notice was not in fact misled thereby.

The administrator of a person injured by a defect in a highway, who after an interval dies of his injuries, may maintain an action, under the Pub. Sts. c. 52, § 17, to recover for the injuries for the benefit of the estate, and at the same time a second action, under § 18, for the loss of life for the benefit of the widow or children or next of kin of the deceased.

In an action under the Pub. Sts. c. 52, § 18, against a city for injuries caused by a defect in a highway, the ground upon which the plaintiff sought to recover was that a horse driven by her shied at a pile of stones in the way, and sprung to the opposite side of the road, so that one of the wheels of the carriage scraped against a stone in another pile there, making a loud noise, but not diverting the carriage from its course, or causing it to tip, or in any way disturbing its equilibrium; and that the horse was frightened at the noise, and started up, and,

after trotting a short distance and going between trotting and running, broke
into a run, and in turning a corner into another street threw her out and caused
the injury.   There was evidence that the street into which the horse turned led
to the stable where it was kept, and that it had an inclination to turn into such
a street, so that it was difficult to restrain it from so doing.   *Held*, that the
question whether the grating of the carriage wheel upon the stone was the
proximate and sole cause of the accident was, even if the horse was frightened
by it, properly submitted to the jury.

A city is not liable, under the Pub. Sts. c. 52, § 18, for an injury caused by the
fright of a horse at a noise produced by the contact of a wheel of a vehicle with
a stone in a street.

FOUR ACTIONS OF TORT.   The first case was for personal
injuries occasioned to the plaintiff, on July 24, 1889, while
driving because of an alleged defect in Park Street, a highway
in that part of the defendant city called West Roxbury.   The
second case was for damages to the carriage, horse, and harness.
The third case was for personal injuries occasioned to Margaret
Fegan, the plaintiff's intestate, who was also in the carriage.
The fourth case was brought under the Pub. Sts. c. 52, § 17, for
the benefit of the intestate's children, to recover for her subse-
quent death.    The cases were tried together in the Superior
Court, before *Dunbar*, J., who allowed a bill of exceptions, in
substance as follows.

It appeared in evidence that on August 17, 1889, a notice was
given in each case to the defendant, in behalf either of the
plaintiff or of the intestate, of which the following is a copy.
" To the City of Boston : Take notice that, about four o'clock
P. M., on the twenty-fourth day of July, I was injured by reason of
a defect in Park Street, West Roxbury District, Boston, a public
way of the city of Boston.   The defect and cause of the injury
consisted of large stones extending about six feet into the trav-
elled part of said way, above the surface from the sidewalk, on
both sides of Park Street, near the junction of Park Street with
Rutledge Street, and northwest of Rutledge Street, and extend-
ing about five to ten feet from said Rutledge Street.   And said
stones were piled within the travelled way in such grotesque
and unusual shape that they constituted a nuisance by their
liability to frighten horses."

There was evidence tending to prove the following facts.
Park Street, which it was admitted was a highway which the
defendant city was bound to keep in repair, ran from north to

south, crossing Rutledge Street and, some four hundred and twenty feet farther to the south, March Avenue. A few days before the accident flagstones intended for a crosswalk were deposited on Park Street near Rutledge Street by the street commissioners, in two irregular piles on either side of the street. The distance in the clear between these piles of stone was estimated at from twelve to twenty-four feet. With the exception of these stones, Park Street was in perfect condition from Rutledge Street to March Avenue, being forty feet wide at Rutledge Street, with sidewalks about six and a half feet in width on either side. About four o'clock P. M. on the day of the accident Mrs. Bowes, driving a horse, which she had driven for some months, and a carriage, in which also was Mrs. Fegan, drove down Rutledge Street to Park Street, and proceeded to turn into Park Street. She was driving slowly as she turned the horse, and saw the piles of stones with the roadway between them. The horse shied at one of the piles, and sprang aside, and one of the wheels came into collision with or scraped against one of the stones on the other side. The scraping of the wheel against the stone made a loud noise, but the carriage was not diverted from its course, or tipped, or in any way disturbed in its equilibrium by the wheel coming in contact with the stone, but the effect of it was to start up the horse to trot fast. At a point two hundred feet from the corner of Rutledge Street the horse was going about as fast as he could at a gait between trotting and running, and Mrs. Bowes had evidently lost control of him. The carriage was at that point in the centre of the roadway, which was clear, open, and straight for a long distance ahead. At once, however, the horse broke into a run, and when he reached the corner of March Avenue turned into that street, and, turning too short a corner, upset the carriage, and the women were thrown out and very severely injured. The horse, while kind and gentle, had an inclination, when near a street leading to his stable, to turn into it, and was usually restrained from doing so with some difficulty; and March Avenue was a street leading to such stable.

The plaintiffs introduced no evidence that the defendant was not misled by the notice, or that it ever, until the time of trial, had a different account of the accident from the one given in the notice.

The defendant requested the judge to rule that the plaintiffs had not made out a case, and to order a verdict for the defendant; but the judge refused so to rule. The defendant then requested the judge to rule " that the plaintiffs, not having offered any evidence that the defendant was not deceived or misled by the notice, could not recover for an accident occasioned by the carriage coming into contact with a stone on the opposite side of the road from the pile of stones which frightened him"; but the judge refused so to rule. The defendant thereupon requested the judge to instruct the jury as follows:

" 1. The remedies given by the statutes, which allow a person to recover for injuries and an administrator for the death of his intestate, are not concurrent, and the administrator Fegan cannot recover in both suits.

" 2. The culpability of the city in this case is not such that the administrator can recover for the death of his intestate.

" 3. If you are satisfied that the accident happened by reason of the horse becoming frightened at the stones, so that he first sprang aside and then ran away, then the city is not liable in this case, and you will find for the defendant."

The judge refused to give the first and second instructions requested, and declined to give the third in the form requested, but in place thereof, after very full instructions, to which no exception was taken, as to what constitutes a defect in a highway, instructed the jury: " I instruct you, for the purposes of this case, that the law is, that if the plaintiff Mrs. Bowes, while driving upon the highway, and using due care, with a horse which was a fit and proper horse to be driven, and with a vehicle and other apparatus which was fit and proper to be used upon the street, came in contact with stones in the highway, which, you say, upon all the facts in the case, constituted a defect, and notwithstanding that this was caused by the momentary starting or shying of the horse from objects upon the other side of the road, which collision with these stones caused a sound, or a shock, or both, which frightened the horse, so that he ran away, and became unmanageable and beyond the control of the driver, and the parties were thrown out by reason of the fright thus caused, and were injured, that the plaintiffs may recover. But it is equally true that if the fright was caused in whole or in part by

the mere appearance of articles by the side of the highway, or in it, and that contributed to the injury which the parties sustained, that the plaintiffs cannot recover."

The jury returned a verdict for the plaintiff in each case; and the defendant alleged exceptions.

*T. M. Babson & R. W. Nason*, for the defendant.

*J. D. Long*, for the plaintiffs.

KNOWLTON, J. These are four suits tried together, in all of which the defendant's liability depends on the same facts. Our discussion of the first will be equally applicable to the others also.

The only ground on which the plaintiff seeks to recover is, that the horse which she was driving shied at a pile of stones, and passed to the opposite side of the road, so that one of the wheels of the buggy scraped against a stone in another pile there, making a loud noise, but not diverting the carriage from its course, nor causing it to tip, nor in any way disturbing its equilibrium; that her horse was frightened at the noise, and started up, and, after trotting fast a short distance and going between trotting and running, broke into a run, and, in turning a corner, threw her out, and caused the injury.

The notice given to the defendant stated the defect and cause of the injury to be " large stones extending about six feet into the travelled part of said way, . . . piled within the travelled way in such grotesque and unusual shape that they constituted a nuisance by their liability to frighten horses." An injury resulting from such a cause is not one for which a city or town is liable, and the jury were instructed at the trial, that, in order to recover, the plaintiff must satisfy them that a collision with the pile of stones was the sole cause of the accident. The notice gave the authorities of the city no reason to expect that the plaintiff would present at the trial such a case as that on which she finally relied. They might well assume that the statement in the notice was true, and that the plaintiff claimed damages on account of an accident caused by the fright of her horse at a pile of stones of such a grotesque and unusual shape as to be likely to frighten horses. The giving of a proper notice stating the time, place, and cause of the accident, is a condition precedent to recovering in cases of this kind. *Gay* v. *Cambridge*, 128 Mass. 387. *Mc-*

*Dougall* v. *Boston*, 134 Mass. 149. Under the St. of 1882, c. 36, which was repealed and re-enacted by the St. of 1888, c. 114, a notice defective in either of these particulars is sufficient if it is shown " that there was no intention to mislead, and that the party entitled to notice was not in fact misled thereby." Under this statute, the burden of proof is on the plaintiff to show that the defendant was not misled by the notice, as well as that there was no intention to mislead. This may often be inferred from the circumstances, without testimony directly to the point. But in the present case the notice was of a kind which would have a direct tendency to mislead, and there was no evidence tending to show that the authorities were not misled by it, or that, as set out in the bill of exceptions, they " ever, until the time of trial, had a different account of the accident from the one given in the notice." Such a notice, and such an investigation as the authorities would naturally make on account of it, would be likely to lead them to rest their defence on the legal proposition that cities are not liable for accidents caused by the fright of horses from objects of a grotesque or unusual appearance in the street. As is said in *Fortin* v. *Easthampton*, 142 Mass. 486, a misstatement is more likely to mislead than no statement at all. We are of opinion that there was no evidence on which the jury could find that the notice was sufficient to enable the plaintiff to recover for an injury caused by a collision with a pile of stones, and that the ruling requested on this point should have been given.

In the last two suits, the court was right in refusing to rule that the administrator could not recover in both actions if he proved the facts alleged in both. The right of action given by the Pub. Sts. c. 52, § 17, is independent of the right of action given by § 18 of the same chapter. The statute creating it was enacted at a different time, and for another purpose. The right to recover damages suffered in his lifetime by one who dies from an injury received on a highway survives to his administrator for the benefit of his estate, and the damages are estimated on the theory of making compensation. Pub. Sts. c. 165, § 1. The action by an administrator, under § 17, on account of his intestate's loss of life, is to recover a sum not exceeding $1,000 for the benefit of the widow and children or of the next of kin of

the deceased, to be estimated according to the degree of culpability of the defendant. Both actions, under the statute, may proceed at the same time, on independent grounds and for different purposes.

The defendant contends that the jury could not find that the grating of the wheel upon the stone was the proximate and sole cause of the accident, even if the horse was frightened by it. There is certainly very little to show that the sound was the cause of the accident. On the plaintiff's theory, the horse was so frightened by the first pile of stones as to pass out of control of the plaintiff far enough to bring the wheel in contact with a stone in the other pile, on the opposite side of the street, and, after the sound caused by the contact, the evidence tended to show that for a considerable distance he was not running, and that he afterwards began to run. No accident occurred until he reached March Avenue, four hundred and twenty-eight feet from the pile of stones. This avenue led to the stable where he was kept, and he had an inclination to turn into any street leading directly to his stable when he came near it; so that it was difficult to restrain him from so doing. In turning into March Avenue the buggy was upset. But, on the whole evidence, it was a queston of fact for the jury whether the increased speed of the horse was caused by fright from the sound; and if they found that it was, they might also find that the sound was the direct and proximate cause of the accident, even if there were concurring conditions, as distinguished from active causes, without which the accident would not have happened. We are of opinion that there was no error in submitting this question to the jury.

We now come to the most difficult part of the case. The defendant contends that fright from a sound produced by the scraping of a wheel against the side of a stone is no different in its legal character from fright at the sight of the stone. It is well settled in this Commonwealth that cities and towns are not liable for injuries caused by the fright of horses from objects in the highway, even if the object is one that would be ever so likely to frighten horses. Can it make any difference whether the fright is from sight or sound? In general, and on principle, we think the answer should unhesitatingly be, No. In *Keith* v.

*Easton,* 2 Allen, 552, it is said that "in no case has it been held that an object existing within the limits of a highway . . . is a defect in the way, merely because it exposes the traveller's horse to become frightened by the sight of it, either at rest or in motion, or by sounds or smells that may issue from it." Fright from sound is put in the same category with fright from sight. See also *Lincoln* v. *Boston,* 148 Mass. 578.

Does it make a difference that the sound is produced by touching the object in passing, without causing the least obstruction to the passage or disturbance of the equilibrium of the vehicle? It is a part of the adjudication in *Cook* v. *Charlestown,* 98 Mass. 80, that it can make no difference "that the object which frightened the horse is one that would have been an obstruction and defect in the way if he had come in contact with it. It is not its quality as an obstruction which causes the injury complained of, but its quality as an object of terror to the horse." Under that decision, it makes no difference in the present case that the stones were so near the centre of the way that, if the plaintiff had driven against them in such a manner as to be obstructed in passing and thrown out, they would have been a defect. As an obstacle over which travellers could not pass in safety they were a defect, but it was not their quality as an obstruction which caused the injury, but their quality as an object which might frighten horses by sound if grazed by a vehicle passing by. The contact was not of the kind in reference to the possibility of which the stones constituted a defect. Would it make any difference if the sound which frightened the plaintiff's horse had been produced by contact of a vehicle drawn by another horse? We think not. Moreover, even if cities and towns were liable for injuries caused by the fright of horses from objects which would be likely to frighten them by sound, this was not such an object. No one would have said that the danger of an accident from fright of a horse at a sound produced by contact with the stone was so great as to make the stone a defect.

Of late it has been the policy of the law not to hold cities and towns to so large a liability as existed under the earlier legislation, and we do not deem it wise to enlarge the class of cases in which there may be recovery against them. A road

may be very dangerous on account of objects in it which are likely to frighten horses, and the court, in deciding *Kingsbury* v. *Dedham,* 13 Allen, 186, and the other cases above cited, might have held the defendants liable, by interpreting the statute more liberally in favor of the plaintiffs. But we think the construction adopted was founded on sound public policy, and that the present case falls within the principles heretofore laid down by this court. We are disinclined to hold that contact with a stone, which was merely a touch, and which produced none of the effects in reference to which stones would be deemed a defect, but only effects in reference to the production of which objects in a way are not defects, makes the case any stronger for the plaintiff than if the same effect had been produced without contact.             *Exceptions sustained.*