## ADKINS v. WRIGHT et al.

### No. 2562. Opinion Filed April 4, 1913.

### (Rehearing Denied June 30, 1913.

### (131 Pac. 686.)

1. **WITNESSES—Competency—Husband and Wife.** A woman called as a witness to testify against a defendant, who was formerly her husband, cannot give evidence concerning any communications made by one to the other while the marriage relation existed.

2. **SAME—Privileged Communications.** The statutes of this state (section 5842, Comp. Laws 1909), as well as the common law, prevent one spouse from giving testimony, falling under the head of privileged communications, against the other either during or after the marital relation has ceased; but neither the statute nor the common law prevents one spouse, after the marriage relation has been terminated, from testifying against the other, regarding independent facts within the knowledge of the witness, and not coming within the privilege.

3. **ADVERSE POSSESSION — Lost Instruments — Establishment— Evidence of Possession—Probative Effect.** The mere possession of lands, without any adverse claim being made to them, for a period less than is provided by the statute of limitations, does not prove title; but direct proof of a written conveyance which has been lost or destroyed may be aided by the presumption flowing from long peaceable possession and repeated or continuous acts of ownership.

4. **EVIDENCE—Lost Instruments—Establishment.** Where the execution and delivery of a written conveyance in a chain of title has been proved, together with the fact of its loss or destruction, relevant secondary evidence may be used in proof of the fact of its existence and contents.

5.  **LOST INSTRUMENTS** — Establishment — Evidence — Admissibi-
lity. Where there is a missing link in an otherwise perfect
chain of title, and there is any competent proof of the execution,
delivery, and subsequent loss of a deed which would supply the
·missing link, such evidence, together with any evidence of long
peaceable possession without adverse claim, the payment of
taxes, the failure of the other claimant to assert his rights
with knowledge of such possession, etc., should be submitted
to the jury on the question of whether such alleged lost deed
had in fact ever existed.

(Syllabus by Brewer, C.)

*Error from District Court, Jackson County;*
*J. T. Johnson, Judge.*

Action by J. G. Adkins against W. B. Wright and another.
The court sustained a ˙demurrer to plaintiff's evidence, and he
brings error. Reversed and remanded for new trial.

*Tisinger, Clay, Robinson & Hamilton,* for plaintiff in error.
*A. R. Garrett,* for defendants in error.

Opinion by BREWER, C. This suit was filed in the district
court of Jackson county May 2, 1910, by J. D. Adkins, plain-
tiff in error, as plaintiff below, against the defendants in error,
T. V. Turner and W. B. Wright. The suit was brought by
plaintiff in possession to remove clouds and quiet his title in
and to lots 10 and 11 of block 8, Wright's addition to the town
of Altus, formerly Leger, Okla. Defendant W. B. Wright dis-
claimed any interest in the lots. Defendant Turner denied
plaintiff's title, and asserted title in himself under a quit-
claim deed from his codefendant Wright. The cause was tried
to a jury, and at the conclusion of the evidence the court sus-
tained a demurrer to the same in favor of the defendant Turner.
Two questions are presented: (1) The action of the court in
sustaining the demurrer to the evidence. (2) Refusal to admit
certain evidence.

These lots are part of a quarter section of land patented
by the United States government to the defendant W. B.
Wright, who afterwards platted the same as an addition to
the present town of Altus. Both parties here claim title under

said patentee.  Plaintiff shows a record title through a long line of conveyances, beginning with the deed from Emma W. Turner.  The only fault in plaintiff's title as shown by the record is the absence of the deed from patentee Wright to Emma W. Turner.  Plaintiff alleged in his petition that this deed had been executed and delivered, but that it had been lost. The court sustained the demurrer to the evidence, upon the theory that there was no proof that a deed had ever been executed by Wright to Mrs. Turner, and that same had been lost; and for that reason that plaintiff had failed to show title in himself to the lots.  If there was no such proof, of course, the court should be sustained; if there was, however, any substantial proof of the execution and loss of this deed which constituted a missing link in an otherwise perfect title, which was strengthened by many years of peaceable possession, then in such event the action of the court cannot be sustained.  We think there was sufficient proof on this point to have justified its submission to the jury.

Mrs. Turner was at the time of the transfer by her of the title to these lots the wife of the defendant Turner.  They were divorced some years before the trial of this case.  These lots were conveyed by warranty deed executed by Mrs. Turner May 25, 1901, to the Orient Land & Townsite Company, since which time this company and the various grantees in the line of title have been in peaceful and exclusive possession of the lots and have paid the taxes thereon.  It does not appear that the defendant Turner claimed or attempted to assert any adverse interest in the same for eight or nine years, and not until he procured a quitclaim deed from the patentee, Wright, which forms the basis for his present claim of title.  All of the proof relative to the deed from the patentee to Mrs. Turner prior to the execution by her of the deed of May 25, 1901, is presented in her deposition used at the trial.  On this point we quote her testimony:

"Q.  I will ask you if you were ever the owner of lots 10 and 11 in block 8, Wright's addition to the town of Altus,

formerly the town of Leger, Okla. A. Yes, sir. Q. From whom did you obtain title to these lots? A. Walter Wright. Mr. Turner bought them from Mr. Wright. Q. Is the Walter Wright that you have just mentioned and W. B. Wright the defendant in this action, the same person? A. Yes, sir. Q. Are you now the owner of said lots 10 and 11, block 8, Wright's addition? A. No, sir. Q. To whom did you deed these lots, if you remember, Mrs. Turner? A. They went to the Orient Railway, but I don't remember the man's name. I would know it if I was to hear it. Q. I will ask you to state, Mrs. Turner, if T. V. Turner was present at the time you deeded these lots? A. Yes. Q. In one of your former answers you spoke of 'the old deed.' What deed was that, Mrs. Turner? A. The deed from Walter Wright to me. Q. Was he (T. V. Turner) or was he not present at the time you made the deed? A. He was standing right by my side."

And further on she stated:

"But anyhow we got the deed that we had and carried it up there to the old Hightower building, made the new one, and left the old one with McDaniel and Bob Brewer. They were the ones that were taking these deeds for the Orient Railroad. I never read the deed that I signed. * * * It was made to the company. * * * *"

There was evidence of a search for the missing deed, and that it could not be found.

This last clause of the evidence quoted above was in the deposition, but the court excluded it, on the objection urged that it was incompetent because of the marital relation previously existing. In this the court erred. Portions of the deposition may possibly have been open to this objection on the ground that they were privileged communications between the parties when they were husband and wife, but we fail to see wherein the statement quoted was other than a statement of fact relative to a title which this witness claimed to possess and which she had conveyed with warranties which under the law she was obligated to defend. The marital relation had long since terminated.

The statutes (section 5842, Comp. Laws 1909) as well as the common law interposed its barrier to her giving testimony

which would fall under the head of privileged communications between husband and wife, but neither the statute nor the common law prevents one spouse, after the marriage relation has been terminated, from being called as a witness in a case in which the other is a party to testify to independent facts within the knowledge of the witness, and not coming within the privilege. 3 Wigmore on Evidence, 2237, note, and cases cited; *Easterly v. Gater,* 17 Okla. 93, 87 Pac. 853, 10 Ann. Cas. 888; Jones on Evidence (2 Ed.) secs. 736, 773; 1 Greenleaf on Ev. (16th Ed.) 337.

The mere possession of lands, without any adverse claim being made to them, for a period less than is provided by limitation statutes, does not prove title; but direct proof of the existence of a written conveyance, which has been lost, may be aided by the presumptions to be derived from possession and repeated or continuous acts of ownership in establishing the title to the land.

Where the conveyance is in writing, it must be proved by the original writing or a properly certified copy, as provided by statute; but if the fact of the written conveyance is proved, together with the fact of its loss, its existence and contents may be proved by relevant secondary evidence. *Cahill v. Cahill,* 75 Conn. 522, 54 Atl. 201, 60 L. R. A. 706; 4 Ency. Ev. 214, and cases cited. *Scott v. Crouch et al.,* 24 Utah, 377, 67 Pac. 1068; *Herndon v. Burnett et al.,* 21 Tex. Civ. App. 25, 50 S. W. 581; *Melvin v. Proprietors,* 17 Pick. (Mass.) 255; *Johnson et al. v. Lyford,* 9 Tex. Civ. App. 85, 29 S. W. 57; *Baylor v. Tillebach,* 20 Tex. Civ. App. 490, 49 S. W. 720.

The important fact in this case was whether there had been a written conveyance from the patentee of these lots to Mrs. Turner, which had been lost. The evidence on this point, taken together with the circumstances of long possession, payment of taxes, and the actions of defendant, with full knowledge of the facts, in asserting no adverse claims to the lots for so many years, was sufficient to take this main question of fact to the jury for determination.

The cause should be reversed and remanded for a new trial.

By the Court: It is so ordered.