## ST. LOUIS & S. F. R. CO. v. GOODE, *Adm'x.*

No. 2688.    Opinion Filed May 12, 1914.

Rehearing Denied September 15, 1914.

(142 Pac. 1185.)

1.    **DEATH**—Action—Right of Action—Personal Injuries.  The right of action of a person, injured through the wrongful act of another, to recover the damages sustained thereby, existed at common law, but abated upon the death of such injured person. This common-law right of action survives, and is thus preserved, in the personal representative of decedent, by the terms of sections 5943, 5944, Comp. Laws 1909 (Rev. Laws 1910, secs. 5279, 5280), and the cause of action and its survival are quite independent of sections 5945, 5946, Comp. Laws 1909 (Rev. Laws 1910, secs. 5281, 5282), relating to the recovery of damages for the benefit of certain beneficiary therein named.  And such action may be prosecuted to final judgment by the administrator, notwithstanding death resulted from such injuries.

2.    **EXECUTORS AND ADMINISTRATORS**—Assets—Right of Action for Personal Injuries.  The damages recoverable in such action, when revived, are only such as were sustained by the injured person in his lifetime (such as accrued in the period between the injury and his death), and when recovered are assets of his estate, and are not for the benefit of the widow and next of kin, except as they may take as heirs upon the final distribution of the estate.

3.    **SAME** — Judgment— Assets of Estate — Recovery for Wrongful Death—Bar to Subsequent Recovery.  Sections 5945, 5946, Comp. Laws 1909 (sections 5281, 5282, Rev. Laws. 1910), create a new cause of action, to be prosecuted for the exclusive benefit of the

beneficiaries named therein; the damages recovered in such suit do not become assets of decedent's estate. Such action is not dependent upon any common-law right, and the right to maintain same is independent of sections 5943, 5944, Comp. Laws 1909 Rev. Laws 1910, secs. 5279, 5280). Nor will a recovery under these sections for the benefit of the widow and next of kin bar a ·recovery for the benefit of the estate of decedent, on account of the suffering and loss the decedent sustained through the injuries wrongfully inflicted on him, where death was not instantaneous.

4.  WITNESSES—Competency—Husband and Wife. Neither the statute nor the common law prevents one spouse, after the marriage relation has terminated, from testifying, in a case in which the other is a party, as to independent facts, within the knowledge of the witness, and not coming within the definition of privileged communications.

5.  APPEAL AND ERROR—Judgment—Remittitur. Where a verdict in a damage suit itemizes the damages allowed, and some of the amounts are not justified under any view of the evidence, but the other amounts allowed seem to have been proper, the court being able to separate the legal from the illegal allowances, plaintiff will be offered the right to remit the amount he is not entitled to receive.

6.  APPEAL AND ERROR—Harmless Error—Instructions. Where an instruction has permitted the jury to award an illegal item of damage, and the illegal allowance can be clearly determined by this court on the record, and a remittitur to cover the illegal allowance is offered and accepted by plaintiff, the error in the instruction becomes harmless.

(Syllabus by Brewer, C.)

*Error from District Court, Comanche County; J. T. Johnson, Judge.*

Action by Gertrude Goode, as administratrix of Frank R. Goode, deceased, against the St. Louis & San Francisco Railroad Company. Judgment for plaintiff, and defendant brings error. Affirmed on condition.

*W. F. Evans, R. A. Kleinschmidt, Stevens & Myers,* and *J. H. Grant,* for plaintiff in error.

*J. L. Hamon* and *Chas. Mitschrich,* for defendant in error.

Opinion by BREWER, C. In the summer of 1906, Frank R. Goode, while a passenger on plaintiff in error's train, was seriously injured in a collision. On September 15, 1906, he instituted this suit to recover damages because of personal injuries

received in the sum of $30,000, also for $3,000 for loss sustained by his business and $750 expended for physicians, nurse hire, drug bills, hotel expenses, etc., incurred because of his injuries. On October 11, 1906, while this suit was pending and before its trial, he died as a result of the injuries sustained in the collision.

After Goode's death his widow qualified as administratrix and brought a new action to recover the damages allowed by statute to the widow and next of kin. This second suit was transferred on motion of the plaintiff in error to the United States court for the Western district of Oklahoma, where a recovery was had, which was thereafter paid.

On February 20, 1907, this suit, brought by Goode in his lifetime, was revived in the name of Gertrude Goode, administratrix, over the objections of the railroad company, and was thereafter tried in the district court of Comanche county, resulting in a recovery of damages for the benefit of the estate of the deceased in the sum of $9,750; the jury in its verdict having itemized the damages as follows: $7,000 general damages; $2,000 loss to business of deceased; $750 for medical attendance, nurses, hotel bills, etc.

No contention is made in the case that the death of Goode was not caused by the negligent acts of the railroad company, and, for the purposes of the case, we take it that defendant's actionable negligence is admitted. So in this situation it is apparent that the controlling question is as to whether or not, under the statutes in force in this state, a recovery for the benefit of the widow and children, on account of the wrongful death of the husband and father, bars a right of recovery by the personal representative of the deceased, of the damages resulting to his personal estate on account of the wrongful act, where the death resulting therefrom was not instantaneous.

The contention of defendant below, as stated in the brief, is:

"Since the death of Frank R. Goode resulted from the injuries received, the right of action for his injuries abated on his death, and but one action could be maintained, that for wrongful death."

The plaintiff, defendant in error here, states her contention as follows:

"We contend that two separate and independent causes of action exist in the event death results therefrom (except in cases of instantaneous death): One for the benefit of his estate, in which the measure of damages is the same as it would have been had he lived and prosecuted the action to final judgment limiting the damages, of course, to the date of his death; the other for the sole use and benefit of the widow and next of kin, the measure of damages in the latter being such amount, as, in the good judgment of the jury, will compensate the widow and children, or next of kin, for the pecuniary loss they suffered by reason of his death."

The statutes of Oklahoma (Comp. Laws 1909), the construction of which, it is admitted, must determine the question presented here, follow:

"5943. In addition to the causes of action which survive at common law, causes of action for *mesne* profits, or for an injury to the person, or to real or personal estate, or for any deceit or fraud, shall also survive; and the action may be brought, notwithstanding the death of the person entitled or liable to the same." Section 5279, Rev. Laws 1910.

"5944. No action pending in any court shall abate by the death of either or both the parties thereto, except an action for libel, slander, malicious prosecution, for a nuisance, or against a justice of the peace for misconduct in office, which shall abate by the death of the defendant." Section 5280, Rev. Laws 1910.

"5945. When the death of one is caused by the wrongful act or omission of another, the personal representatives of the former may maintain an action therefor against the latter, if the former might have maintained an action had he lived, against the latter for an injury for the same act or omission. The action must be commenced within two years. The damages cannot exceed ten thousand dollars, and must inure to the exclusive benefit of the widow and children, if any, or next of kin, to be distributed in the same manner as personal property of the deceased." Section 5281, Rev. Laws 1910.

The next section (5946, Comp. Laws 1909, Rev. Laws 1910, sec. 5282) merely relates to who may prosecute the action under certain contingencies and has no important bearing on the question being considered.

In the instant case it must be conceded that Goode died because of the actionable negligence of defendant; that he received injuries so severe that they later caused his death; that in the interim he suffered great pain; that his injuries required and received expensive medical attention, nursing, etc., with hotel and drug bills, and the absolute loss of his time; that this resulted in damage and loss to his estate, and was unquestionably recoverable by him at the time this suit was filed. Was the right to have these damages lost at the time he died, and, if so, why? The decision of this case rests on an answer to the above question.

At common law the injured person could recover damages for the injury done his person, which included pain and suffering, and also for that occasioned his personal estate, but for the fact of his death; his death, however, prevented a recovery by abating the suit. The right to recover for the personal injury, however, was a common-law right. The recovery allowed by Lord Campbell's Act, 9-10 Vict., for pecuniary loss to the family (the widow and children), or next of kin, occasioned by the death of the injured person, was unknown to the common law. It stands solely on the statute, not only on the right to prosecute the suit, but for the very right itself. The action for the injury first mentioned only needs a statute to enable the injured person to prosecute his suit (to keep it alive and from abating); he had the right (the action) at common law.

Thus far there is slight conflict in the authorities, but after this all is confusion. Even the English cases seem to be in conflict. One theory advanced in some of the cases is that the right of action given by Lord Campbell's Act is merely a continuance, in the personal representative of the deceased, of a right vested in the deceased in his lifetime; other cases hold that the right to recover is an entirely new right created by the act.

As we shall presently see, this dividing line in the authorities is highly important in this case. In fact, it controls the controlling question. We believe that this can be demonstrated. Now this suit for the damages done the deceased and his estate, as we have said, was based on an existing common-law right, when it was filed; had Goode lived to prosecute it, his right of action and right

to prosecute and recover on it is not and cannot be controverted; at common law his cause of action would not, but his right to prosecute it would, have died with him. Therefore all this suit needed after his death was a removal of the common-law bar to a recovery. By referring back to section 5943 it will be seen that this obstacle is removed. By this section large classes of actions, which at common law abated with the death of the injured party, are made specifically to survive his death. Actions for "mesne profits," "injury to the person," or to "real or personal estate," or for any "deceit or fraud," no longer die with the injured man. This section of the statute preserves these causes of action quite independently of section 5945 and quite as fully as if it had not been passed. Then, further, in this case the cause of action had been put in suit in the lifetime of the injured man; and section 5944, "no action pending in any court shall abate by the death of either or both the parties thereto," etc., still further protects and preserves it; unless it can be successfully maintained that section 5945 merely continues the cause of action which had vested in Goode, and did not create a new cause of action, and that it being a mere continuance of the old right, by considering the three sections of the statute as in *pari materia*, it would follow that one or all of the supposed causes of action would merge into the one right of a recovery for the pecuniary loss sustained by the family on account of the death. This shows why it is so important to determine whether section 5945 creates a new cause of action. If it does, the other sections discussed most certainly preserve the original cause of action.

We have become fully convinced that according to the weight of authorities, both in England and the United States, the cause of action given by Lord Campbell's Act (which is substantially section 5945) is a new cause of action and not a continuation of the one vested in deceased in his lifetime. And, outside of the authorities, reason brings this conclusion. If it is the same cause of action, why should not all the elements of damage recoverable in the old one be recoverable under the statute? Yet they are not. Under Lord Campbell's Act, and the state statutes modi-

fied on it, the widow and next of kin, or whomsoever of relatives may be named as beneficiaries, are never allowed to take into the account of their damages the pain and suffering the injured person endured; in such suit the damages are confined and limited to compensation for the pecuniary loss sustained by the beneficiaries, because of the death of the one from whom they confidently expect financial assistance had he lived. Besides, in such cases no part of the recovery becomes assets of the dead man's estate; it all goes to those named in the statute. But under the injured man's own cause of action all the recovery would be assets of his estate and subject to the demands of creditors, if any. So we see that, under the section we are discussing, the recovery is based and awarded on different elements of damage, and the amount recovered becomes funds of an entirely different nature. And, further, the right is given, and most generally arises, in cases of instantaneous death. It seems to us to be very difficult to argue that, in cases of instantaneous death, there was a cause of action vested in the decedent in his lifetime to be continued.

We shall not quote on this point the authorities, but shall content ourselves with citing a number of them, and referring any one who cares to go minutely and analytically into the English and early American authorities (prior to 1889) to a careful review thereof, made by Mr. Chas. R. Darling, in which, after a critical study, he arrives at the conclusion we have come to on the point. This paper is reported in 28 American Law Register (N. S.) at pages 385, 515, 577.

In volume 13, Cyc. 316, tit. "Death," it is said:

"In many jurisdictions, under statutes providing that whenever death shall be caused by wrongful act, such as would, if death had not ensued, have entitled the party injured to maintain an action, the persons who would have been liable had death not ensued shall be liable notwithstanding such death, and designating the beneficiaries, it is held that such action is not a survival of the former right of action, but that a new cause of action arises, since there is an element in it, in addition to that which constituted the cause of action in favor of the person injured, namely, death must ensue as a consequence of the injury, and also because only the damages which ensue from the death are recoverable; and under these statutes, creating a new cause of

action in favor of designated beneficiaries, the right of action thereunder is not affected by the fact that the deceased is instantaneously killed."

See *Blake v. Midland Ry. Co.*, 18 Q. B. 93; *Payne v. G. N. Ry. Co.*, 2 B. & S. 759; *Barnett v. Lucas* (Irish) 6 C. L. 247; *Fink v. Garman*, 40 Pa. 95; *Perham v. Portland Elec. Co.*, 33 Ore. 451, 53 Pac. 14, 24, 40 L. R. A. 799, 72 Am. St. Rep. 730; *Whitford v. Panama Ry. Co.*, 23 N. Y. 465; *Malott, Rec., v. Shimer, Adm'r*, 153 Ind. 35, 54 N. E. 101, 74 Am. St. Rep. 278; *Andrews v. Hartford & N. H. Ry. Co.*, 34 Conn. 57; *Smith v. Louisville & N. Ry. Co.*, 75 Ala. 449; *City of Norwalk* (D. C.) 55 Fed. 98; *The Oregon* (D. C.) 73 Fed. 846; *Northern Pac. Ry. Co. v. Adams*, 116 Fed. 324, 54 C. C. A. 196.

When it is once conceded or established that the widow's action, under section 5945 of the statute, is an entirely new cause of action, it follows that it is independent, both in the right and the enforcement of it, of section 5943; in other words, this last-named section might be stricken from the law without injury to the right to recover the widow's damage. And as has been suggested elsewhere, the right to recover decedent's personal damage for his estate is perfect under the common law, aided by section 5943, independent of and without any aid from section 5945. This leads us to believe that the two causes of action, in cases such as this, are coexistent; that a recovery on the one does not bar a recovery on the other; that the damages to the estate begin with the wrong and cease with the death; that the widow's damages begin with the death; that they do not cover the same field, nor do they overlap. We think, after a somewhat extended study of the cases, arising under a similar condition of the statute law, that the holding here made is supported not only by reason, but by the weight of authority. In approaching the matter, the investigator will be bewildered by the variety of views expressed and the apparently hopeless conflict into which the courts have fallen; but this is more apparent than real. Much of the trouble comes from the fact that the statutes involved in the various states differ widely. In some states we find only the statute allowing the widow's recovery, and no general revivor section. Obviously a

decision from such a state would be valueless here.   In other
states the statute in terms or by necessary implication limits the
right to one recovery.   In some states the two sections of the
statute were passed at different times, in others as part of the
same legislation; and this fact seems to have influenced the de-
cisions, although it is difficult to see why it should.   Therefore a
decision, to be of value to us, must have been based on a similar
condition of the statutes.   And, as the question is a new one in
this jurisdiction, we shall quote liberally from decisions which,
under the above suggestion, are quite applicable to the instant
case.

The Arkansas Supreme Court, where the statutes, while dif-
fering in phraseology, are materially alike in meaning, has gone
into the question in *Davis v. Railway*, 53 Ark. 123-126, 13 S. W.
801, 802 (7 L. R. A. 283), and says:

. "These appeals involve three suits brought against the rail-
way on account of an injury to a minor resulting in his death.
Two are by the personal representative of the minor; one of them
for the benefit of his estate, the other for the benefit of the
next of kin.   The third is an action by the father of the minor
to recover for the loss of his son's services during his minority.
The question presented at the threshold of the cases is:   Who
can maintain action against a railroad for an actionable injury
resulting in the death of a minor?   The answer involves a con-
sideration of the common law and the statutes on the subject.
The cause of action which accrued to the injured party by the
common law survives to his administrator after his death by
virtue of a provision of the Revised Statutes of 1838, which is
carried into Mansfield's Digest as section 5223.   *   *   *·  The
question then is:   What is the effect of this statute (Mansf. Dig.
secs. 5225, 5226) upon the general provision (*Id*. sec. 5223)
regulating the revival of actionable wrongs to the administrator
or executor of the injured person?   We are not without authority
upon the question.   The English rule, which is commonly fol-
lowed by the courts of the states whose statutes embody the
provisions of Lord Campbell's·Act, is that the right of action,
given by the latter statute to the personal representative of
one whose death has been caused by the default of another, is
created by the statute, and is not a continuation of the right of
action which the deceased had in his lifetime, although the new
right, it has been ruled, arises only by preserving the cause of

action which was in the deceased. If the deceased never had a cause of action, none accrues to his representative or next of kin. The right which accrued to the deceased revives to his administrator by virtue of the former statute (Mansf. Dig. sec. 5223); the newly created right results from, and accrues on, the death of the injured party. Both actions are prosecuted in the name of the personal representative, where there is one, and may proceed *pari passu*, without a recovery in the one having the effect of barring a recovery in the other, because the suits are prosecuted in different rights, and the damages are given upon different principles to compensate different injuries. One is for the loss sustained by the estate and for the suffering from the personal injury in the lifetime of the decedent, the recovery in which goes to the benefit of the decedent's creditors, if there are any; the other takes no account of the wrongs done to the decedent, but is for the pecuniary loss to the next of kin, occasioned by the death alone. The death is the end of the period of recovery in one case and the beginning in the other. In one case the administrator sues as legal representative of the estate, for what belonged to the deceased; in the other he acts as trustee for those upon whom the act confers the right of recovery for the pecuniary loss inflicted upon them. *Blake v. Railway*, 18 Q. B. 93; *Pym v. Railway*, 2 B. & S. 759; *Barnett v. Lucas*, Irish Rep. 6 C. L. 247; *Needham v. Railway*, 38 Vt. 294; *Littlewood v. Mayor, etc.*, 89 N. Y. 24 [42 Am. Rep. 271]; *Railway v. Phillips*, 64 Miss. 693 [2 South. 537]; *Hulbert v. Topeka* [D. C.] 34 Fed. 510; *Fordyce v. McCants*, 51 Ark. 509 [11 S. W. 694, 4 L. R. A. 296, 14 Am. St. Rep. 69] *supra*. The statutes under which the two actions are brought do not therefore cover the same ground; there is no repugnancy between them, and the latter does not impair the right conferred by the former. *Needham v. Railway*, 38 Vt. 294, *supra*; *Commonwealth v. Railway*, 107 Mass. 236."

Quite like the Arkansas case is that of *Brown v. Chicago & N. W. R. Co.*, 102 Wis. 141-143, 77 N. W. 748, 749 (44 L. R. A. 579), in which that court said:

"The learned counsel for respondent contend, with much learning, that the section last referred to, and sections 4255 and 4256 of the statutes, giving a right of action to relatives in certain circumstances specified, should be construed together, so as to limit actions that survive under section 4253 to cases where death does not ensue from the injury. That claim has the merit

of being supported by decisions elsewhere under similar laws, but, looking only to the language of the statutes, no good reason is perceived for resorting to construction at all to determine their meaning. The language seems too plain to allow that. We have not even good reason for saying, as some courts have, that the statutes were enacted at the same time, or went into effect at the same time, and it is therefore unreasonable to hold that the Legislature intended to give two rights of action at the same time for one injury. The law of this state conferring upon surviving relatives the right to recover their pecuniary loss caused by the wrongful taking off by death of a husband, wife, child, father, or mother has existed for over 40 years, while the law reviving the right, in favor of the personal representatives of a deceased person, to his claims for damages to his person was not enacted till 1887. But independent of that circumstance, as before observed, the language of the two provisions is plain. They refer to entirely distinct losses recoverable in different rights; the one in the right of the deceased for the loss occasioned to him, the other in the right of the surviving relatives for the loss to them. Both are dependent on the injury, but only one dependent on the death with surviving relatives to take under the statute. The language of one provision is that 'actions for personal injuries shall survive,' and of the other, 'in case of the death of a person by the wrongful act of another,' under certain circumstances named, the wrongdoer 'shall be liable to an action for damages notwithstanding the death of the person injured, if the death be caused in this state.' The only condition of the right of action in the former case is the existence of the actionable claim for damages at the time of the death of the injured party. The statute creates no new liability, but prevents the lapsing by death of an old one. The only condition of liability under the other provision is the existence of an actionable claim in the right of the injured party at the time of his death and the existence of the beneficiaries mentioned in the statute. The liability of the wrongdoer, while dependent on the condition named, is not on the actionable claim called for to satisfy such condition, but on a new right created by the statute—the right of the surviving relatives to compensation for the loss which falls upon them. The language of the statutes, when viewed in the light of the evident legislative purpose, is too plain to justify courts in interpolating into them language not there by necessary implication from the context, in order to make them accord with the ideas of judges as to the best legislative policy."

And on rehearing in the above case the court, in an opinion worth reading throughout, reported in *Brown v. Chicago & N. W. R. Co.,* 102 Wis. 137, 78 N. W. 771, 44 L. R. A. 579, adds:

"We should say, in passing, that the suggested difficulties in administering the law, and danger of injustice to defendants, are largely imaginary, and will gradually disappear as we adapt ourselves to the new conditions which the revival statute creates. The trial judge can easily, by proper instructions, limit the recovery in a revived action to the loss actually caused to the deceased prior to his death; and in the action under section 4255, Rev. St., to the pecuniary loss sustained by the surviving relatives entitled to the benefits of that provision. * * * The injustice of two recoveries for distinct grievances, suggested by the learned counsel, and by some courts that have taken the view pressed upon us, is not perceived. A little dispassionate reflection on the subject, it would seem, would prevent unqualified condemnation of the legislative wisdom, that says, if a person be wrongfully injured, the pain and suffering and expenses to him in consequence thereof shall not be lost to his estate by the circumstance of his death from the injury before receiving satisfaction for his damages, even though the damages to his surviving relatives, to satisfy their own grievance, may be recovered. * * * The idea that our statute (section 4255, Rev. St.) does not grant a new right of action, but continues an old one, with different beneficiaries and different rules for assessing damages, is urged, as correct, with such confidence that we are called upon to go over the subject anew. No attempt will be made to harmonize all the conflicting observations found in decisions elsewhere regarding the nature of Lord Campbell's Act. That cannot be done, and it is not necessary for most of the conflicts will disappear, as one applies judicial observations to the particular facts in regard to which they were made. We said in the former opinion that the view that the statute for the benefit of surviving relatives confers a new right of action for a grievance separate and distinct from that of the injured person is supported by the better reasoning and the greater weight of authority."

The Supreme Court of Massachusetts has said in *Bowes v. City of Boston,* 155 Mass. 349, 29 N. E. 634, 15 L. R. A. 365:

"In the last two suits, the court was right in refusing to rule that the administrator could not recover in both actions if he proved the facts alleged in both. The right of action given by Pub. St. c. 52, sec. 17, is independent of the right of action given

by section 18 of the same chapter. The statute creating it was enacted at a different time and for another purpose. The right to recover damages suffered in his lifetime by one who dies from an injury received on a highway survives to his administrator for the benefit of his estate, and the damages are estimated on the theory of making compensation. Pub. St. c. 165, sec. 1. The action by an administrator, under section 17, on account of his intestate's loss of life, is to recover a sum not exceeding $1,000 for the benefit of the widow and children or of the next of kin of the deceased, to be estimated according to the degree of culpability of the defendant. Both actions, under the statute, may proceed at the same time, on independent grounds and for different purposes."

The Supreme Court of Michigan has held in the syllabus to *Hurst, Adm'r, v. Detroit, etc., Ry. Co.,* 84 Mich. 539, 48 N. W. 44:

"The right of action given by How. Stat. sec. 8314, to the personal representatives of a deceased person for the pecuniary injury resulting from his negligent killing, and that which survives under Act No. 113, Laws of 1885 (3 How. Stat. sec. 7397), for negligent injuries to the person, are separate and distinct causes of action, and the latter cannot be introduced into a cause based upon the right given under the first statute cited, by way of amendment to the declaration."

The Supreme Court of Mississippi has held in *V. & M. R. Ry. Co. v. Phillips,* 64 Miss. 702, 703, 2 South. 538, as follows:

"The right of the administratrix to sue and recover whatever damages her intestate might recover, if living, is indisputable. Code, secs. 2078, 2079. If Jo. Brantley had sued, as he might, and died while the action was pending, it would have survived to his administrator by virtue of section 1513 of the Code. Section 2078 authorizes the prosecution by the personal representative of any personal action whatever which the decedent might have commenced and prosecuted, and section 2079 specifically authorizes an action for any trespass done to the person or property, real or personal, of the decedent. The last named may have been unnecessary, but it cannot be held to limit the comprehensive language of section 2078. Certainly it authorizes this action, even if it is a limitation of the preceding section. It probably sprung from the determination to secure the survival of this kind of action. It is found as article 46, p. 485, of Code of 1857, while the original of section 2078, *supra,* is article 119, p. 455, Code of 1857. It is manifest that the death of Jo. Brant-

ley did not destroy the right of action, for, had he commenced an action, it would have survived by section 1513, as stated above, and section 2079 plainly provides for the institution of such an action by the personal representative. Section 1510 provides for an action to recover for the death of a person, and it is entirely distinct from and independent of an action by the personal representative. They may coexist, but have no connection."

The Supreme Court of Georgia held in *Railway Co. v. Glover*, 92 Ga. 132, 18 S. E. 406, in the syllabus:

"It is no bar to a suit by the mother, for the homicide of her minor son, that the father has a pending suit in which he claims damage for the loss of the son's services up to the time the latter would have arrived at his majority."

The Supreme Court of Vermont in *Needham v. Railroad Co.*, 38 Vt. 294, said:

"The principles on which the intestate's cause of action rested at common law are the same, irrespective of the cause of his death. He had a right of action for the injury, and that right existed till his death. At common law his right of action died with his person, but it is revived by the statute in favor of his administrator. The action by the administrator founded on the claim of his intestate under the provisions of section 12 could include nothing more than his intestate's cause of action. That section simply revives, but does not enlarge, the common-law right of the intestate. Under the provisions of that section, it is evident that no damages could be assessed by reason of his death, nor resulting from his death. The sum recovered by the administrator, in an action founded exclusively upon the claim of his intestate, under the provisions of the twelfth section, would be treated as assets in the hands of the administrator for distribution among the creditors and heirs of the intestate, agreeably to the general provisions of our statute. It is urged that if the intestate's cause of action is revived, when death occurs in consequence of the injury, it constitutes no distinct cause of action, but is devolved upon his personal representative under the provisions of the fifteenth section, and forms part of the ground of recovery under the provision of the latter section for the exclusive benefit of the widow and next of kin. It will be evident, we think, that such conclusion is not warranted by the provisions of the statute, nor could it be sustained on principle. In the first place, the act of 1849 (sections 15, 16, and 17 of chapter 52 of the General Statutes) does not profess to revive the intestate's cause of action. The intestate's cause of action is

revived by the provisions of the act of 1847. It would not be reasonable to suppose that the Legislature intended, without reference to the extent of the intestate's claim and cause of action, without reference to the legal or equitable claims of his creditors, without reference to the extent of the injury resulting from his death to his wife or other relatives, and without reference to the number and situation of his relatives, whether near or remote, to include the intestate's cause of action in a recovery under the provisions of the fifteenth section for the exclusive benefit of the widow and next of kin. The intent of the fifteenth, sixteenth, and seventeenth sections was to make the damage or pecuniary injury resulting from such death to the widow and next of kin the subject of a new cause of action and right of recovery, wholly distinct from the consequences of the wrong to the injured party, and wholly distinct from his claim for damages resulting from such injury. The provisions of the last-mentioned sections have introduced principles wholly unknown to the common law, or to any previous statute of this state, namely, that the value of a man's life to his wife and next of kin constitutes a part of his estate to be administered by his personal representative, and that the whole proceeds of the recovery for such loss shall go to his widow or surviving relatives. Notwithstanding the action in such case is to be prosecuted in point of form by the executor or administrator, he is only a trustee of the sum recovered for the use of the widow and next of kin, and the sum so recovered cannot be treated as assets in his hands for distribution among the creditors. No right of action, under the provisions of section 15, exists during the lifetime of the injured party. When death occurs from the injury, the right of action given under the provisions of that section arises after and at the moment of his decease. The damages resulting from his death are then prospective. Such damages to the widow and next of kin begin where the damages to the intestate ended, viz., with his death."

But counsel say in the brief that the above case was later overruled by the Vermont Court in *Legg v. Britton,* 64 Vt. 652, 24 Atl. 1016. We answer this with the words of Justice Marshall in meeting this same contention in *Brown v. Chicago N. W. Co., supra*:

"Now a few words in regard to the Vermont case (*Needham v. G. T. R. Co., supra*), which will be considered in the light of *Legg v. Britton,* etc. * * * (after discussing the question says), it was not discredited, but rather was affirmed, in the subsequent discussion in *Legg v. Britton.* * * * There

is nothing new in the decision. It is in perfect harmony with *Needham v. G. T. R. Co.*, which, instead of being considered over-ruled, should be considered as affirmed, and so is considered by other courts that have reviewed the subject."

The Supreme Court of South Dakota in *Rowe v. Richards*, decided last year and reported in 142 N. W. 664, 32 S. D. 66, said in the syllabus:

"A cause of action for injury to the person and the cause of action based on death by negligence do not conflict with each other, nor do they merge on the death of the injured party, neither is the prosecution or satisfaction of either a bar to the prosecution and recovery on the other; a cause of action for injury being for the benefit of the party injured, and, if death ensued, then the amount of recovery to be assets of his estate, while a cause of action for death is for the benefit of the dependents entitled thereto."

In an opinion by Federal Judge McPherson in *Jacobs v. Glucose, etc., Co.* (C. C.) 140 Fed. 767, while reluctantly following the Iowa rule, otherwise observed:

"Plaintiff's counsel contend with much force that under an Iowa statute all causes of action survive, despite the death of the person entitled to the same; and he rightly contends that, had Jacobs survived, he could have maintained the action for pain and suffering. Under this statute I am not able to see why he did not have a cause of action and his estate another. And whether such recoveries would be paid over to the same person in the same right, with or without the same exemptions, in my opinion, is of no importance. The proper probate court would take care of that question. Suppose that at the end of five days, when it was not known that Jacobs would die from his injuries, the attending physician had negligently or willfully given Jacobs a poison, from which he died within a few minutes? Can any lawyer say that the administrator could not maintain an action against the defendant herein for pain and suffering, and another action against the physician for damages to the estate? And if this be so, then by what logic or reasoning can it be said that two actions cannot be brought against one wrongdoer, the one for pain and suffering and the other for damages to the estate? Both are actions for compensatory damages. The one survives to the administrator under one statute, and the other is given to the administrator under another."

As sustaining a recovery, for the benefit of the estate, as distinguished from a recovery on account of pecuniary loss to the family, it was held in the English case of *Bradshaw v. Lancashire & Yorkshire Ry. Co.,* L. R. 10 C. P. 189, that the principle upon which the first-mentioned recovery was allowed was not affected by Lord Campbell's Act. In that section the defendant was a common carrier on whose road the deceased was a passenger when the injuries were received which resulted in his death. The action seems to have been brought in form *ex contractu.* Justice Grove said in the opinion:

"Does the fact that in this case, besides the injury to the estate, the testator's death has likewise resulted from the breach of contract make any difference, or does the fact that provision has been made in such cases for compensation in respect of the death to certain relatives by Lord Campbell's Act take away any right of action that the executrix would have had but for that act? It does not seem to me that the act has that effect, either expressly or by necessary implication. The intention of the act was to give the personal representatives a right to recover compensation as a trustee for children or other relatives left in a worse pecuniary position by reason of the injured person's death, not to affect any existing right belonging to the personal estate in general. There is no reason why the statute should interfere with any right of action an executor would have had at common law. In the case of such right of action he sues as legal owner of the general personal estate which has descended to him in course of law; under the act he sues as trustee in respect of a different right altogether on behalf of particular persons designated in the act."

See, also, as bearing on the point, *International & G. N. R. Co. v. Kuehn et al.,* 70 Tex. 582, 8 S. W. 484; *Roach, Adm'r, v. Imperial Mining Co.* (C. C.) 7 Fed. 698.

But it is contended, as against the force of authorities cited above, that the case of *McCarthy v. C., R. I. & P. Ry. Co.,* 18 Kan. 46, 26 Am. Rep. 742, decided by the Kansas court in 1877, and the later cases following it, are controlling. It is true in that case the court seems to have held that the section allowing a recovery of pecuniary loss to certain beneficiaries took away the right of the administrator to sue for the benefit of the estate,

where death resulted from the injuries. The court reached this conclusion that the general survival section of the statute (our section 5943, *supra*) must be limited, by construction, so as to permit actions to survive only in cases where the injured person does not die from those particular injuries. We do not believe there is any room for such a construction of this section of the statute; that it is opposed to reason and the generally observed rules of construction, and is against the weight of authority in states having similar statutes. *Hutchinson v. Krueger,* 34 Okla. 23, 124 Pac. 591, 41 L. R. A. (N. S.) 315; *Ex parte Bowes,* 8 Okla. Cr. 201, 127 Pac. 20.

It has been pointed out clearly above that most of the states around us, and from which much of our population came, had applied an entirely different construction. Therefore we feel that the statute having come here construed, as it had been by so many states, contrary to the Kansas construction, we are not bound, as a matter of law, to follow the Kansas rule. We are strengthened in this belief when we read the criticism of the Kansas construction in *McCarthy v. C., R. I. & P. Ry. Co., supra,* announced in *Hulbert v. City of Topeka,* 34 Fed. 510, by Judge Brewer, who was on the Kansas court at the time, and concurred in the McCarthy decision. Judge Brewer said in the Hulbert case, in discussing the McCarthy case, that:

"I was a member of the supreme bench of Kansas at the time this opinion was filed and concurred in it. I feel constrained to follow that decision; and yet I may be permitted to say that examination of this case has led me to doubt the correctness of that conclusion, for the measure of damages and the basis of recovery under the two sections are entirely distinct. Section 422 gives a new right of action, one not existing before; an action which is not founded on survivorship; an action which takes no account of the wrong done to the decedent, but one which gives to the widow or next of kin damages which have been sustained by reason of the wrongful taking away of the life of the decedent. It makes no difference whether the injured party was killed instantly or lived months; whether he suffered lingering pain or not; whether or not he was put to any expense for medical attendance and nursing. None of these matters are to be considered in an action under section 428; and the single ques-

tion is: How much has the wrongful taking away of his life injured his widow or next of kin? * * * Suppose, as in this case, the decedent lived a long time after injury, was put to great expense for medical attendance and nursing; for these matters, which work a loss to the estate, she had a right of action in her lifetime. This action it is which, by section 420, survives. * * * It is obvious that both of these causes of action may exist against two different parties, and why may they not exist against the same party? Suppose A. commits an assault and battery on B., a cause of action exists in favor of B. against A. for those injuries which survives by section 420. Suppose, after such action is instituted by B., he should be killed by the wrongful act of C. There certainly would be an action under section 422 against C. for such wrongful death. Would that defeat the first action, or would not that survive, as provided under section 420? If that be true where there are two wrongdoers, why should it not also be true where there is but one wrongdoer?"

We also note that the Kansas Court of Appeals in *M. P. R. Ry. Co. v. Bennett,* 5 Kan. App. 231, 47 Pac. 183, took a different view from that announced in the McCarthy case, although the Supreme Court has continued to hold fast to the original holding.

The Supreme Court of Kansas held that a cause of action arose under the section allowing damages to the widow, and that decedent's own cause of action for damages for the injuries was not revived, but died with him. The Illinois Supreme Court in *Holton v. Daley, Adm'r,* 106 Ill. 131, takes the view that the statute giving damages to the relatives is a continuation of the common-law action decedent had for his injuries. These two courts reach the same conclusion, that but one recovery can be had in case of death, but the reasoning of the one in reaching it is inconsistent with the reasoning of the other in reaching the same conclusion. This illustrates the uncertain foundation for the holding, which we are constrained to believe the courts came to make out of, in our judgment, the groundless fear that the person or corporation, which wrongfully causes the death of a human being, would be compelled to pay too heavy damages.

The views we have expressed here in no way conflict with the holding in *Shawnee Gas & Elec. Co. v. Motesenbocker,* 41

Okla. 454, 138 Pac. 790. In that case sections 4611, 4612, St. Okla. 1903 (sections 5945, 5946, Comp. Laws 1909; sections 5281, 5282, Rev. Laws 1910), were being considered.

2. The next point urged in the brief is that the court erred in admitting the testimony of the widow of deceased. This point is without merit. The testimony of the witness, after the termination of the marital relation, was as to facts within her knowledge, not to confidential communications from her husband. She testified as to his actual condition after his injury; as to the necessity for attention and nursing; that she took him to Illinois, where he died; how long he lingered there; and that he was able to walk on crutches, etc. This evidence was competent. *Adkins v. Wright et al.,* 37 Okla. 771, 131 Pac. 686.

3. The next point made is that there was no proof of the value of the medical services rendered deceased. The jury, as has been observed in stating the facts of this case, itemized the damages allowed in the verdict. The jury allowed $750 for medical attention, etc. There was positive proof that plaintiff had paid $450 for medical attention; beyond this there was no evidence, except by the inference that it costs money to obtain drugs and nursing, and be cared for at a hotel, etc., but the jury cannot award expenses of this kind without some proof of their value or what was paid out on that account. This item is $300 too large under the evidence. This will have to be remitted.

4. The next objection is that the court erred in refusing to admit in evidence the pleading in the other suit. This evidence was for the evident purpose of establishing the former recovery, on the theory that it was a bar and complete defense in this suit. Having held that it was not, it was therefore immaterial, and its rejection was not error.

5. Complaint is made also as to the damages allowed for loss of business. We think this point is well taken. Defendant in error replies to this contention as follows:

"While there was no definite evidence as to the exact amount of loss to the business of deceased, yet it was apparent that the closing of the factory must, of necessity, have injured the business. If the court is of the opinion that they were not justi-

fied in so doing, the same rule would be applicable to this item as we have indicated in reference to the amount allowed for physicians' services, etc."

We do not think the item of $2,000 allowed in the verdict, evidently on the theory that the small manufacturing plant of deceased was forced to close down at a loss because of the injury and death of Goode, was justified. This sum should be remitted if the judgment is to stand.

6. The objections urged to the instructions ought not to be sustained. The feature of the instructions most questionable related to the recovery of certain damages which we will require to be remitted; therefore they worked no injury.

We therefore conclude that if, within 30 days from the rendition hereof, the defendant in error shall file with the clerk of this court a *remittitur* in the sum of $2,300 to cover the award of improper damages, the judgment as to the remaining sum should be in all things affirmed.

If the *remittitur* is not made the case is to stand reversed, with remand for a new trial.

By the Court: It is so ordered.