ROWE, Respondent, v. RICHARDS et al., Appellants.

(151 N. W. 1001.)

(File No. 3520.   Opinion filed March 27, 1915.   Rehearing denied April 7, 1915.)

1.   **Actions—Actions for Wrongful Death—Release of Damages by Injured Person, as Affecting Right of Action by Wife, Etc.— New "Cause of Action" Under Statute—Common-law Action— Survival Statute.**

Under Laws 1909, Ch. 301, Sec. 1, declaring that whenever death is caused by wrongful act, neglect, or default such as would (if death had not ensued), have entitled injured party to sue and recover damages, then the corporation or person who would have been liable if death had not ensued, shall be liable in an action for damages, notwithstanding the death of the injured person, and Sec. 3, providing that every such action shall be for exclusive benefit of wife, husband, or children, or, if there be neither of them, then of parents or next of kin of person whose death is so caused, held, that, where a husband, who had been injured by negligent act of defendants, settled with defendants and executed to them a release of all damages occasioned by such act, an action might still be maintained by the widow and administratrix, under said statute, to recover damages which she and her child, as widow and surviving child, suffered through the death of the husband and father, caused by said act; that said statute creates a wholly distinct "cause of action" from that which the injured person possessed for damages for which he might, in his lifetime, have sued, and an entirely new and separate "cause of action," as distinguished from, and not a continuation of, the common-law cause of action

given a party for his own physical injury, and the statute is not a survival statute, merely giving a right of action for a cause of action known to the common-law.

Smith, and Gates, J. J., dissenting.

2. **Actions—Action for Wrongful Death by Widow—New "Cause of Action" Under Statute—"Cause of Injury" Distinguished From "Cause of Action"—Damages, Resulting From "Cause of Injury."**

In an action by a widow of one whose death was alleged to have been caused by negligent act of defendants, on behalf of herself and a child of decedent, for damages resulting from such death occasioned by said act, under Laws 1909, Ch. 301, **held,** that the cause of the injury, upon which a right of action is founded, is not the "cause of action" itself, but is only an element of the cause of action, which cause of action consists of a right belonging to one person, and some wrongful act or omission by another by which the right has been violated; and, while Sec. 1 of said Act, wherein it refers to death caused by wrongful act, neglect, or default such as would (if death had not ensued) have entitled the injured party to recover damages, provides certain things in relation to the "cause of the injury" that must be established as condition precedent to any recovery under the statute, but does not define what damages defendant shall be liable for in the "action for damages" therein mentioned—whether for damages known to the common-law, or for damages therein first recognized—yet Sec. 3, giving right of action to wife, etc., of the person whose death was so caused, provides that the damages for which, under Sec. 1, the wrongdoer is made liable, are "proportionate to the pecuniary injury resulting from such death to the persons respectively for whose benefit such action shall be brought;" and **held,** further, that those damages are such as are suffered by the survivors through violation of their primary right, which right was violated by the breach of duty such wrongdoer owed such survivors. **Held,** further, that the first half of Sec. 1 has sole reference to the question whether or not the party receiving the physical injury ever had a cause of action therefor, and has no reference to the condition of such party's claim at time of his death.

Smith, and Gates, J. J., dissenting.

Appeal from Circuit Court, Codington County. Hon CARL G. SHERWOOD, Judge.

Action by Jessie Rowe, widow and administratrix of William D. Rowe, deceased, against O. H. Richards and others, to recover damages resulting to herself and child, through the death of her husband, caused by defendants' negligence. From an

order sustaining a demurrer to the answer, alleging settlement and release of damages by decedent after receiving the injury, defendants appeal.    Affirmed.

*J. G. McFarland, and McFarland & Johnson,* for Appellants. *Sherin & Sherin,* for Respondent.

(1) Under point one of the opinion, Appellant cited: Note in 27 L. R. A. (N. S.) p. 176; Laws 1909, Ch. 301; Cooley on Torts, 2d Ed., pp. 309, 264; 8 Am. & Eng. Ency. Law (2d Ed.) 870; 1 Tiffany, Death by Wrongful Act, Sec. 24; Littlewood v. New York, 89 N. Y. 24, 42 Am. Rep. 271; Lubrano's Case, 19 R. I. 129, 34 L. R. A. 797, 32 Atl. 207; Whitford v. Panama Ry. Co., 23 N. Y. 465; Legg v. Britton, 64 Vt. 652, 24 Atl. 1016; Hill v. Pennsylvania R. Co., 178 Pa. 223, 35 L. R. A. 196, 35 Atl. 997; Thompson v. Fort Worth & R. G. Railway Co., 80 S. W. 991; Walkerton v. Erdman, 23 Can. S. C. 352; Price v. Richmond & D. R. Co., 33 S. C. 556, 12 S. E. 414; Sweetland Case, 117 (Mich.) 329, 43 L. R. A. 568, 75 N. W. 1066, 1078; Brown v. Chicago & N. W. R .Co., 102 Wis. 137, 44 L. R. A. 579, 77 N. W. 748, 78 N. W. 773; Southern Bell and Telegraph Co. v. Cassin, 111 Ga. 575, 50 L. R. A. 694; Hecht Case, 132 Ind. 507, 32 N. E. 302; Price v. Richmond & Danville Railroad Company, 33 S. C. 556, 26 Am. St. Rep. 700; Holton v. Daly, 106 Ill. 131.

Respondent cited: Rowe v. Richards, 32 S. D. 66, 132 N. W. 664; Belding v. B. N. & Ft. P. R. R. Co., 3 S. D. 369; Mahoning Valley R. R. Co. v. VanAlstine, (Ohio) 14 L. R. A. (N. S.) 893, and note; Leggott v. Great Northern Railway Co., L. R. 1, Q. B. Div. 599; Bradshaw v. Lanshire & Y. R. Co., L. R. 10, C. P. 189; Robinson v. Canadian P. R. Co., (1892) A. C. 481; Whitford v. Panama R. Co., 23 N. Y. 465; Vicksburg & M. E. Co. v. Phillips, 64 Miss. 693, 2 So. 537; Putnam v. Southern P. Co., 21 Or. 230, 27 Pac. 1933; Davis v. St. Louis, I. N. & S. R. Co., Ark. 117, 7 L. R. A. 283; Hedrick v. Ilwaco R. & Nav. Co., 4 Wash. 400, 30 Pac. 714; Bowes v. Boston, 155 Mass. 344, 15 L. R. A. 365; Brown v. Chicago & N. W. R. Co., 102 Wis., 137, 44 L. R. A. 579, 77 N. W. 748; Hulbert v. City of Topeka, 34 Fed. 510; Needham v. Grand Tr. Co., 38 Vt. 294; Mageau v. G. N. R. Co., 15 L. R. A. (N. S.) 511.

WHITING, J.   Plaintiff, the widow of one Wm. D. Rowe

and the administratrix of his estate, brought this action, under the provisions of chapter 301, Laws 1909, and sought to recover damages which she and her child, as widow and surviving child, suffered through the death of the husband and father, which death was alleged to have been occasioned by the negligent acts of defendants. Defendants alleged that the deceased, after receiving the injury from which he afterwards died, settled for such injury with one of the defendants and executed a full release of all damages occasioned by the alleged negligent acts. This allegation of the answer was demurred to; the demurrer was sustained; and it is from the order sustaining same that this appeal was taken. The sole question presented to us is: Does such settlement with, and release by, the deceased bar the right to bring this action?

This cause has been before us upon a former appeal; our opinion upon the questions then raised being found in Rowe v. Richards, 32 S. D. 66, 142 N. W. 664. In such opinion will be found the following statement without the present italicizing:

*"While not necessary to a decision in this case,* in order to prevent confusion in the future relative to the cause of action growing out of injuries to the person and the cause of action based upon death by negligence, it might be well to state that these two causes of action do not conflict with each other, nor do they merge upon the death of the injured parties; *neither is the prosecution or satisfaction of either a bar to the prosecution and recovery on the other."*

Appellants contend that, owing to the fact that it was unnecessary for this court to make the above statement and adopt the rule therein announced in order to determine the questions then before us, what was so stated did not become the law of this case, and they urge upon us a further consideration of the question now presented. We welcome this opportunity of giving to this question that full consideration and discussion which its importance demands, not, however, conceding that it did not receive a very full and careful consideration at the time this cause was before us upon the former appeal.

[1] Chapter 301, Laws 1909, is almost identical in language with statutes to be found in most of the states, which statutes are commonly designated as Lord Campbell Acts, in

recognition of the fact that they are all copied more or less closely after the original English statute known as the Lord Campbell Act. Our statute, so far as material to our present discussion, is as follows:

"Section 1. Whenever the death of a person shall be caused by wrongful act, neglect or default, and the act, neglect or default is such as would (if death had not ensued), have entitled the party injured to maintain an action and recover damages in respect thereof, then and in every such case, the corporation which, or the person who, would have been liable, if death had not ensued, * * * shall be liable to an action for damages, notwithstanding the death of the person injured. * * *

"Sec. 3. Every such action shall be for the exclusive benefit of the wife or husband and children, or if there be neither of them, then of the parents and next of kin of the person whose death shall be so caused; and it shall be brought in the name of the personal representative of the deceased person; and in every action the jury may give such damages, not exceeding in any case ten thousand dollars ($10,000.00), as they may think proportionate to the pecuniary injury resulting from such death to the persons respectively for whose benefit such action shall be brought."

Appellants quote from the notes found in 27 L. R. A. (N. S.) 176, in support of the claim that their contention is "supported * * * by all the cases that we have been able to find, where the precise question was raised under a statute similar to our chapter 301." It must be acknowledged that a large number, and perhaps a majority, of the cases wherein this precise question was under consideration, have held in accord with appellants' view, but to so acknowledge comes far short of conceding that the weight of authority supports such view—one holding, backed by reasoning that is cogent, may be sufficient to outweigh any number of opinions wherein the argument, even though forcible, lacks that convincing power that forces conviction. To our minds, in every case wherein the court, construing a statute similar to ours, has held that an injured party could release the wrongdoer from any liability for damages that might result to his next of kin from his death, the reasoning of the court, so far at least as it bore upon this particular question, lacks both in

cogency and logic. It will be our endeavor herein, not to take up each case so holding and point out wherein the reasoning is open to criticism, but, starting as a premise from one proposition upon which the vast majority of the courts and law writers are agreed, to demonstrate, not only the correctness of such premise, but, through a course of reasoning which it seems to us possesses at least the elements of cogency, to demonstrate the correctness of the statement quoted from our former opinion.

Preliminary to such discussion, and to throw some light upon the intent of the legislative bodies when passing these statutes, it may be of interest to inquire into the conditions that gave rise to such statutes. Why was it found necessary, either in this country or England, to enact any statute such as the one before us? It was because of the fact that during the evolution of that great and, in most respects, grand body of established law evolved by the early jurists of these countries, such jurists were obsessed with the idea that a money value could not be placed upon human life; and it followed that, inasmuch as there can be no legal injury where there is no recognizable damage therefor, the courts held, as stated by Lord Ellenborough in Baker v. Bolton, 1 Comp. 493: "In a civil court the death of a human being cannot be complained of as an injury." While it would be the limit of absurdity to say that any person could have a right of action for his own death, yet it was just as absurd to say that damages flowing from an injury which a wife or child may suffer through the loss of the husband's or father's support was incapable of proof in a court of justice merely because such loss of support resulted from the death of such husband or father. As is well said in Cooley on Torts, 26:

"It is remarkable that the common law * * * should not have allowed the damages suffered by others from an unlawful killing to be recovered. The interest which husband and wife possess in each other's life must usually have a pecuniary value which would be estimated for many purposes at a large sum in dealing with others. * * * Why should not the money value of his life, when it is taken away by unlawful act or negligence, be a right of action in the hands of his representatives?"

With the evolution of modern industry, resulting as it did

in frequent deaths from negligence, the injustice of the rule of
the common law became impressed upon the leaders of thought,
and, from a realization of its injustice to a recognition of the
utter unsoundness of the reasons urged in support thereof was
but a short and natural step. The thinking mind could not help
but recognize that the then established rule presented—
"a glaring absurdity in allowing a husband and father, if injured,
but not killed, a right of action for the recovery of the damages
thus sustained, and denying to his widow and children any com-
pensation for the damages inflicted upon them, should the injury
be greater and result in his death." Maney v. C., B. & Q. R. R.
Co., 49 Ill. App. 105.

In discussing this situation, the court, in Van Amburg v.
Vicksburg, etc., R. R. Co., 37 La. Ann. 650, 55 Am. Rep. 517,
well said:

"Legislation and jurisprudence have combined to perpetuate
the extraordinary doctrine that the life of a free man cannot be
made the subject of valuation, and under the domination of that
dogmatic utterance, made earlier than the Roman Digest, repro-
duced therein, and echoed by the courts of all countries from
then till now, the singular spectacle has been witnessed of courts
sanctioning damages for short-lived pains, and refusing them for
a live-long sorrow and the pecuniary losses consequent upon the
death of one from whom was deprived support, comfort, and even
the necessary stays of life. Legislation has at last come to the
relief of future sufferers."

In speaking of such legislation, the court, in Maney v.
Railway, supra, said:

"The enactment of the statute under consideration established
the doctrine that the wife and next of kin and each of them had
a property right and financial interest in the life of the husband
and relative. Prior to its enactment this property or financial
interest was not recognized by the law, and no award of com-
pensation for its loss was permitted. Thus a new right of action
was created in favor of persons who before had neither right,
cause of action, or remedy. If we are right thus far, the wife
and children of Daniel Maney, by the operation and effect of the
statute, had a financial property interest in the continuation of
his life. It did not flow from, nor was it based upon, the desire

or consent of Daniel Maney. As husband and father, the law charged him, while living, with the performance of certain duties in their behalf and for their benefit. The duties arose out of marital and parental relations, were created by law, out of consideration of public policy, existed wholly without regard to the will of the husband, and were legally enforceable in his lifetime against him and his property. It was a substantial, subsisting right in favor of his wife and children, available to them during the continuation of his life. Prior to this enactment it ceased at his death. By the enactment the right was kept alive, if his death be occasioned by the wrongful act, neglect, or default of another, and a remedy provided for its enforcement against the party so causing his death. Neither argument nor authority would seem to be necessary to sustain the view that the widow and next of kin cannot be deprived of the property right so created and vested in them at the will or pleasure or by the contract of another, though he be the party charged with the performance of duties out of which the right grew."

Regardless of their views upon other questions arising in actions based upon statutes such as the one before us, the courts almost uniformly hold that the statutes which give, on behalf of the next of kin, an action for an injury occasioned by the death of one killed, *create a new cause of action separate and distinct from, and not a continuation of, the common-law cause of action given a party for his own physical injury.* Judge Denio, in his opinion in Whitford v. Panama R. Co., 23 N. Y. 465, said of this statutory action:

"But the suggestion that the present action is brought to enforce the right which the common law gave to the deceased, and that the provisions of our statute should be considered as affecting only the remedy, * * * is not, in my opinion, sound; for it is not a simple devolution of a cause of action which the deceased would have had which the statute effects, but it is an entirely new cause of action which is here sought to be enforced. The system of the statute, as well as of the common law, is that the right of action for damages on account of his bodily injuries which belonged to the deceased while he lived was extinguished by his death. The statute does not profess to revive his cause of action in favor of the executor or administrator. The com-

pensation for the bodily injuries remains extinct, but a new grievance of a distinct nature, namely, the deprivation suffered by the wife and children, or other relatives, of their natural support and protection, arises upon his death, and is made by the statute the subject of a new cause of action in favor of these surviving relatives, but to be prosecuted in point of form by the executor or administrator."

In Pittsburgh, C., C. & St. L. Ry. Co. v. Hosea, Adm'r, 152 Ind. 412, 53 N. E. 419, the court said:

"The statute expressly recognizes that, when death ensues from a wrongful act, the next of kin are the persons damnified, and the action is given to compensate them for the damages sustained thereby. In no sense can the action given by statute be said to be the same as that resting in the intestate before his death, further than that the source is the same. In the former the right comes by the common law; in the latter by statute. In the former the elements of damage that were recoverable were for bodily pain and suffering, loss of time and health, and expenses incurred in providing medicial attendance and nursing; in the latter the damages are confined to pecuniary loss. To the widow is allowed, for example, the amount of damages sustained by her in the loss of such support as she was receiving, and was likely to receive, from her husband, to be measured by his present and prospective earnings, less the sum required for his personal support and other family obligations. To his child is allowed, not only for the loss of his support during infancy, but also for the loss of parental care and training."

In Mahoning Valley R. Co. v. Van Alstine, 77 Ohio St. 395, 83 N. E. 601, 14 L. R. A. 893, the court said:

"It is manifest from the foregoing that the revived action and the later action are not the same. They rest primarily upon the same alleged negligence of the defendant and the same absence of contributory negligence of the injured person; but in the revived action the damages are for personal injuries to the injured person for which an action would lie if death had not ensued, and such damages to inure when recovered to the benefit of the estate, while in the later action the suit is prosecuted in the interest of other parties, and the measure of damages is the

pecuniary loss they have sustained by the death. In the later case death gives the right of action under the statute, while, had the pending action not been susceptible of being revived, the death would have terminated the right to recover in the interest of the estate."

In Brown v. C. & N. W. Ry. Co., 102 Wis. 137, 77 N. W. 748, 78 N. W. 771, 44 L. R. A. 579, the court said:

"But, * * * as before observed, the language of the two provisions is plain. They refer to entirely distinct losses recoverable in different rights; the one in the right of the deceased for the loss occasioned to him; the other in the right of the surviving relatives for the loss to them. Both are dependent on the injury, but only one dependent on the death with surviving relatives to take under the statute."

To the same effect are the opinions in the following cases: Putman v. Southern Pac. Co., 21 Or. 230, 27 Pac. 1033; Missouri Pac. Ry. Co. v. Bennett's Estate, 5 Kan. App. 231, 47 Pac. 183; Maney v. C., B. & Q. R. R. Co., supra; Hurst v. Detroit City Ry., 84 Mich. 539, 48 N. W. 44; Vicksburg & M. R. Co. v. Phillips, Adm'x, 64 Miss. 693, 2 South. 537; Bowes v. City of Boston, 155 Mass. 344, 29 N. E. 633, 15 L. R. A. 365. See, also, 1 C. J .198, and the numerous cases cited in notes 98 and 99.

But we are reminded that our statute and that of various other states are almost verbatim copies of the original Lord Campbell's Act; and we are especially reminded that such statutes have retained the phrase "notwithstanding the death of the party injured," and that they omit to specifically declare that the action which can be brought thereunder is one "for the death" of such injured party. It seems to be contended that, where the first only of these phrases is used, there is shown an intent to create a survival statute under which the *cause of action* which the common law gave to a party suffering an injury through the wrong or negligence of another would survive, and a *right of action* therefor be given for the benefit of certain survivors; but that, where the second or some equivalent phrase is used in the statute, there is shown an intent to create an entirely new *cause of action* on behalf of such survivors. No such distinction, based upon the use or the failure to use the first of such phrases, has

ever been recognized by any court so far as we have been able to learn, and certainly none is justified.

We may well stop to inquire why it is that any one should fail to recognize that statutes like ours create a new cause of action. We may also well ask why it is that the various courts of our land, while not making the mistake of holding that such a statute does not create a new cause of action, yet differ so radically in their views relative to matters merely incident to the causes of action. We are constrained to believe that the explanation is to be found in the failure to keep carefully in mind the various elements going to make up the particular cause of action contemplated by the statute, and therefore a failure to recognize that, in the cause of action contemplated by the statute, there are one or more elements which, in their very nature, distinguish such cause of action and its incidents from that cause of action which the common law gave to the party who suffered the physical injury. While the phrase "cause of action" is often used as synonymous with "right of action," and is even used when it is the "subject-matter" in litigation that is referred to, yet we think its true meaning is clear. It has been frequently stated that a "cause of action" consists of the right belonging to one person and some wrongful act or omission by another by which that right has been violated. Veeder v. Baker, 83 N. Y. 156; Goodrich v. Alfred, 72 Conn. 257, 43 Atl. 1041; Kennerty v. Etiwan Phosphate Co., 21 S. C. 226, 53 Am. Rep. 669; Mercantile Trust & Deposit Co. v. Roanoke & S. R. Co. (C. C.) 109 Fed. 3; Atchison, T. & S. F. R. Co. v. Rice, 36 Kan. 593, 14 Pac. 229; McKee v. Dodd, 152 Cal. 637, 93 Pac. 854, 14 L. R. A. (N. S.) 780, 125 Am. St. Rep. 82. Pomeroy, in his Code Remedies (4th Ed.) § 347, and in his Remedies and Remedial Rights (2d Ed.) § 453, with his usual clearness and exactness, says (the italicizing being ours):

"Every remedial right arises out of an antecedent primary right and corresponding duty and a delict or breach of such primary right and duty by the person on whom the duty rests. Every judicial action must therefore involve the following elements: *A primary right* possessed by the plaintiff, and a corresponding *primary duty* devolving upon the defendant; a *delict or* wrong done by the defendant which consisted in a *breach* of such

*primary right and duty;* a remedial right in favor of the plaintiff, and a remedial duty resting on the defendant springing from this delict; and, finally, the remedy or relief itself. Every action, however complicated, or however simple, must contain these essential elements. Of these elements *the primary right and duty and the delict or wrong combined constitute the cause of action in the legal sense of the term, and as it is used in the Codes of the several states.* They are the legal cause or foundation whence the right of action springs; this right of action being identical with the 'remedial right' as designated in my analysis. In accordance with the principles of pleading adopted in the new American system the existence of a legal right in an abstract form is never alleged by the plaintiff; but, instead thereof, the facts from which that right arises are set forth, and the right itself is inferred therefrom. The cause of action, as it appears in the complaint when properly pleaded, will therefore always be the facts from which the plaintiff's primary right and the defendant's corresponding primary duty have arisen, together with the facts which constitute the defendant's delict or act of wrong."

Judge Cooley, in the case of Post v. Cambau, 42 Mich. 96, 3 N. W. 275, said:

"The elements of a cause of action are: First, a breach of duty owing by one person to another; and, second, a damage resulting to another from the breach. Damage, where no duty is violated, is damnum absque injuria. A neglect of duty, where no loss occurs, is equally incapable of giving a right of action."

[2] There can be no breach of duty by one person except there be a corresponding right belonging to some other peson, so that there is in reality no difference between the several definitions. Judge Cooley calls attention to damage as a necessary element in a "cause of action," but, as the violation of a legal right produces a legal injury from which damage is presumed too flow, the difference between such definitions is more apparent than real. One thing that should never be lost sight of is that:

"*The cause of the injury upon* which the right of action is founded is not the 'cause of action' itself, but is only one element in the cause of action." Parris v. Atlanta, K. & N. Ry. Co., 128 Ga. 434, 57 S. E. 692.

This fact seems to have been lost sight of by those courts

which have held that there could be but one recovery for one wrong—"one wrongful act." Just as it is a law of physics that, when one of the elements which go to make up a compound is changed for another, a new compound is created, so it is true that, whenever one of the elements going to make up a given cause of action is replaced by a new element, the original cause of action ceases to exist, and another, a separate and distinct cause of action comes into existence. Keeping this fundamental truth in view, let us separate into their elements the two "causes of action"—one the cause of action recognized at common law; the other the one given by chapter 301, Laws 1909, supra.

Every person has an inherent right to personal, physical safety; upon every other person rests the duty to respect such inherent right; a person may be guilty of any number of negligent or unlawful acts, either of commission or omission, yet, if by the same he does not violate some one's right to personal safety, he has not violated his duty toward that other person, and his acts do not enter into, or become an element of, any "cause of action"; but whenever, by any such act, he does violate that duty which he owes to some other person, and the right of such other is infringed, he brings into existence the third element which, uniting with the other elements—the right and the duty—creates the "cause of action" one recognized by the common law.

What of the elements going to make up a "cause of action" under said chapter 301? There cannot be found in section 1 thereof a single word which indicates or points out what "damages" the defendant shall be liable for in the "action for damages" therein mentioned—whether it shall be for some damages known to the common law or for some damages for the first time recognized by such statute itself; section 1 provides certain things in relation to the "cause of the injury" that must be established as a condition precedent to any recovery under such statute, but it is to section 3 of our statute and to section 2 of the original Lord Campbell Act that one must look to determine whether the statute merely gives a *right of action* for a *cause of action* known to the common law, and is therefore a survival statute, or whether it creates a new *cause of action* separate and distinct from any known to the common law, thus rendering such statute in no sense a survival statute. As stated by Judge Cooley, "damage"

is one of the necessary elements in a cause of action; from the "damage" which is recoverable one can always determine whose "primary right" it is the breach of which gives rise to a "cause of action." Thus in section 3 of our statute we find that the damages, which section 1 says the wrongdoer shall be liable to an action for, are damages "proportionate to the pecuniary injury resulting from such death to the persons respectively for whose benefit such action shall be brought." What plainer language could be used to show that it is the damages suffered by the survivors through the violation of *their* "primary right" that are to be recovered? In other words, that the "cause of action" for which recovery is to be had is one based upon the breach of the duty the wrongdoer owed such survivors, a cause of action distinct and separate from that which the injured party could have maintained, having but one thing in common with the other cause of action— the *cause* of the injury, the wrongful act, being the same in each case, a cause of action as clearly "for the death" of the party who received the physical injury as though such phrase was contained in our statute; the "primary right" violated is entirely distinct and different from the primary right of the party receiving the physical injury whose primary right was also violated by the same wrongful act; The damages resulting from the violation of the survivors' primary right are not even composed of the same elements as those found in the cause of action resulting from the violation of the primary right of the deceased—in the one case the damage recoverable is that suffered or yet to be suffered by the party receiving the physical injury, and is therefore restricted to a time which must terminate at his death; in the other case the damage recoverable is limited to that suffered after, but owing to, the death of the one receiving the physical injury. What primary right of the survivor has been violated? Take the case of the surviving wife. One of the recognized legal rights of a wife—a right flowing from, and incident to, the marital relation—is the right to support and maintenance by her husband; to such support and maintenance she is entitled until death shall sever such marital relation; the corresponding duty of the husband to support and maintain his wife is dependent upon the continuance of his life, hence it is the further right of the wife that such duty shall not be terminated by the

wrongful act of another; it follows that there is a legal duty resting upon every person not to deprive such wife of the support and maintenance of her husband by any wrongful act—by the abduction of such husband, by the alienation of his affections resulting in estrangement and separation from his wife, or by an act that deprives him of his life. Whenever this right of the wife to the support of her husband is violated through the death of the husband occasioned by some wrongful act of a third party, there exists the several necessary elements—the right, the duty, the infringement of one by the wrongful violation of the other—which, uniting, create a cause of action; one however, unknown to the law, except where by statute the law recognized that there could be a legal damage, one measurable in money, resulting from the death of a human being. It therefore follows that, under the definitions of "cause of action" as given by Cooley and Pomeroy, and universally accepted by the courts of our land, this "cause of action" recognized and given by section 3 of our statute is a new cause of action. The *cause* of the two injuries—that to the husband and that to the wife—is, as hereinbefore noted, the same, the one wrongful or negligent act, but the *right* violated in the one case is entirely different from the *right* violated in the other case.

There are, however, states having statutes containing section 1 of the Lord Campbell Act, some having, and others not having, sections similar to our section 3, which have provisions therein giving a right to the personal representatives of the party who received the physical injury to recover the very damages which the deceased might have recovered—in other words, provisions giving a *right of action* where one was unknown to the common law for a *cause of action* which was known to the common law; whenever such provisions are found, the statutes are, to the extent of the cause of action covered by such provisions, survival statutes, though, if they also contain provisions such as are found in our section 3, they also create a new cause of action in addition to giving a new right of action for an old cause of action.

We must confess our inability to grasp the logic of any course of so-called reasoning through which the conclusion is drawn that the husband simply because he may live to suffer

from a physical injury and thus become vested with a cause of action for the violation of his own personal right, has an implied power to release a cause of action—one which has not then accrued; one which may never accrue; one which from its very nature cannot accrue until his death; and one which, if it ever does accrue, will accrue in favor of his wife and be based solely upon a violation of a right vested solely in the wife. The unsoundness of such reasoning rests not only upon the fact that this cause of action so held to be released is not in existence during the life of the husband, but it rests even more upon the fact that the *legal right* the existence of which is the fundamental element in every cause of action upon which the other elements all rest is not a right that, in the remotest manner, directly or indirectly, belongs to the husband; it is, in fact, a right which the wife, by virtue of the marital relation, holds *against* her husband—a right giving rise to a *duty* upon his part; it is that marital right in lieu of which a court grants alimony when terminating that bond upon which such right and its corresponding duty have theretofore rested. Maney v. Railway, supra. We apprehend that no one would deny but that it would be the limit of absurdity for one to contend that a wife who had been forcibly abducted could, when settling with the wrongdoer for the wrong done her, the violation of her right of personal liberty, also bind her husband by settling for the wrong done him, the violation of his right to her services, and thus bar his right of action therefor. Yet such a case would, in its underlying principles, be on all fours with the case before us; we would have the inherent right to personal safety vested in the wife which with its violation gives to her a cause of action; we would have the marital right of the husband, the corresponding marital duty of the wife, the violation of the husband's marital right resulting in a cause of action in the husband; and the two causes of action would, just as in the case of injury to, and resulting death of, a husband, result from one wrongful act.

We think that what we have said above shows the absurdity of the contention that to allow a recovery for the injury suffered by the deceased and for that suffered by the next of kin is to allow the recovery of double damages for one wrong—it being axiomatic that there can be no wrong without a corresponding

right, and that where there are two rights violated, the wrongs are separate and distinct.   Of course, it is a recovery of two items of damages resulting from one *wrongful act,* but it is not the recovery of two items of damage for one *injury.*   A., in negligent disregard of the rights of others, fires a bullet from his rifle, the shot neither disturbs nor physically injures any person or property, hence there is no cause of action; he fires another bullet, it injures B., immediately there arises a cause of action; the shot also kills B.'s cow, one element of the cause of action is changed and another cause of action arises; the shot kills B.'s child, again a new element and a new cause of action. No one would contend that the recovery of damages on all the causes of action was the recovery of triple damages for one wrong, though it is the recovery of three items of damage flowing from three separate injuries occasioned by one wrongful act. The bullet shot by A. also kills a cow belonging to B.'s wife— again there is a change in elements, and a new cause of action arises; the wrongdoer is not mulcted in even double damages when he is compelled to settle for the wife's cause of action after having settled the husband's three causes of action; how, then, can it be claimed, with any semblance of reason, that A. is being mulcted in double damages if, after he has settled for all the above causes of action, it turns out that the injury to B. proves fatal, and A. is compelled to respond to B.'s wife in settlement of the new cause of action that comes into existence upon B.'s death, a cause of action having in it an element not to be found in either of the other causes of action, but chancing to have one element in common with the others, the wrongful act?   In what respect is her loss less real, or her rights entitled to less consideration, than they would have been if the shot fired by A. had resulted in the instantaneous death of B.?

But we find at least two courts (Littlewood v. Mayor, 89 N. Y. 24, 42 Am. Rep. 271; Southern Bell Telephone Co. v. Cassin, 111 Ga. 575, 36 S. E. 881, 50 L. R. A. 694) questioning the wisdom of a policy that would allow a recovery for an injury resulting from the death of, after settlement with, the husband. These courts, and especially the Georgia court, lay great stress upon the wrongs, even to the injured party and his next of kin, that must flow from holding as we held in our former opinion.

If it were clear that great wrong and injustice would flow from so construing this law, of which we are far from convinced, such fact could only be considered when seeking to arrive at the intent of the lawmakers, such intent being doubtful on account of lack of clearness in the language used. We think the following from the opinion in Brown v. C. & N. W. Ry. Co., supra, is very pertinent to the reasoning of such courts, and we would note that it was used in speaking of a Lord Campbell Act:

"The language of the statutes, when viewed in the light of the evident legislative purpose, is too plain to justify courts in interpolating into them language not there by necessary implication from the context, in order to make them accord with the ideas of judges as to the best legislative policy. The judicial function, we need not say here, does not extend so far. It calls for a firm adherence to the law as written, if valid, without regard to individual opinions as to its being good or bad. In this we do not intend to suggest that the law in question, as construed here, is a bad law. On the contrary, there appears to be much wisdom in providing that a person who wrongfully causes a personal injury to another shall not profit by that other's death, so far as actual damages go, either to the deceased person or to the wife, husband, or lineal descendants or ancestors of such person."

If, however, the question of public policy were at all pertinent to this discussion, we would suggest that it is clearly against, rather than in accord with, sound public policy to allow a person, especially when his own selfish interests may be affected thereby, to settle either an accrued or anticipated cause of action to which he is not and cannot, from the very nature of such cause of action, be a party.

All courts and law writers, when announcing the rule contended for by appellant, refer, as an authority, to the case of Read v. Great Eastern Railway Company, 3 Q. B. English Law Reports, 555, a case wherein the real "Lord Campbell Act" was under consideration. A reading of the opinions therein reveals that two grounds for the decision of the court are suggested: That the law-makers did not intend "to make the wrongdoer pay damages twice for the same wrongful act"; and that, "taking the plea (of settlement) to be true, the party injured could not

'maintain an action in respect thereof,' because he had already received satisfaction." The unsoundness of the first ground we believe we have shown; the second appears to be based upon the peculiar wording of the statute, and its correctness depends upon whether the statute, taken as a *whole,* will permit such an effect to be given the words "have entitled the party injured to maintain an action." The second ground, which is indorsed by several American courts, is thus stated in 6 Thomp. Neg. § 7028:

"The right of action in the personal representatives, it has been held, depends not only upon the character of the act from which death ensued, but also upon the condition of the decedent's claim at the time of his death. If the claim was in such shape that he could not have enforced it had death not ensued, the statute gives the executors no right of action, and creates no liability whatever on the part of the person inflicting the injury."

Speaking of this rule—that a release by the injured party bars a right of action on behalf of the next of kin—the learned author of Elliott on Railroads, at section 1376, says:

"This is certainly true where the statute is a mere survival statute, and it is also generally held to be the rule under most statutes of the other class, but in the case of statutes of the latter class, where they give a new right of action not dependent upon the right of the deceased to maintain an action if he had lived, it is somewhat difficult to support the rule by logical reasoning, and some judges deny it in such cases."

It is in regard to this particular ground for holding a release or settlement a bar to an action on behalf of the next of kin that the learned author of the notes to the American State Reports said in 70 Am. St. Rep. 684 (the italicizing being ours):

"It is somewhat difficult to combat the logic which leads to such a conclusion. The rule, however, that no action for wrongful death is maintainable, except where deceased himself could have sued had he survived, *applies to, as indeed it grew out of, matters pertaining to the nature and cause of the injury which resulted in death.* Was the negligence or wrongful act of defendant the proximate cause of the injury? If not, deceased could not have recovered against him, nor can his successors under the statute. Did deceased's contributory negligence cause the injury? If so, any action for such injury is similarly barred. If

the relation of master and servant subsisted between deceased and defendant, was the injury resultant from the act or neglect of a fellow servant, or was it, for any reason arising out of the rules of master and servant, such an injury as gave rise to no liability on the part of the defendant? If this is answered affirmatively, * * * no cause of action ever arose which was susceptible of release or compromise. Where, however, a cause of action does arise, and the injured person has a period of suffering and expense, there seems no reason that he should not be able, while living, to make any adjustment of his claim with defendant which would bar a recovery by his beneficiaries after his death upon the same claim. But the action given under other than survival statutes is entirely distinct from the action which deceased had at the moment prior to his death. It is an action for damages arising from the mere fact of death, not damages to the death, but damages to his successors under the statute. Therefore we cannot comprehend the reasoning which enables an injured person to release a cause of action which has not accrued, and cannot accrue until his death, and which then accrues to third persons. It would be necessary to support such a conclusion that we admit that a person has a right of action for his own death. A greater degree of absurdity would not be attained in the enactment of a statute making suicide punishable as murder in the first degree."

In line with the above, we are firmly of the opinion that the first half of section 1 of our act has sole reference to the question of whether or not the party receiving the physical injury ever had a cause of action therefor, and has no reference to the condition of such party's claim at the time of his death. Did the English court in the Read case construe the Lord Campbell Act as creating a *new cause of action,* or did it consider such statute to be in the nature of a survival statute? If the first, their conclusion that a release by the injured party bars any claim by next of kin is inconsistent therewith; if the second, their conclusion is consistent therewith, but such conclusion should have no weight in any court that holds that the act creates a *new cause of action.* Fourteen years after the decision in the Read case the case of Griffiths v. Dudley was decided, the opinion being found in 9 Q. B. Div. Eng. L. Rep. 357. An examination of that case

shows that, in order to reach the decision therein, it became
necessary to carefully consider the Read case. Two judges
wrote opinions, and in speaking of the Read case said (using
the language of Judge Field, the language of Judge Cove being
almost identical therewith) :

"Read v. Great Eastern Ry. Co. is a clear decision that·
Lord Campbell's Act did not give any new cause of action, but
only substituted the right of the representative to sue in the place
of the right which the deceased himself would have had if he
had survived."

Was this statement regarding the holding in the Read case
justified by the language used by the two judges who wrote the
opinions in that case?   It certainly was.   Judge Philbrick, in
writing the main opinion, said, after the words hereinbefore
quoted :

"Then comes section 2, which regulates the amount of dam-
ages, and provides for its apportionment in a manner different to
that which would have been awarded to a man in his lifetime.
This section may provide a new principle as to the assessment of
damages, but it does not give any new right of action."

And Judge Lush said :

"It is true that section 2 provides a different mode of assess-
ing the damages, but that does not give a fresh cause of action."

Thus it is seen that the English court was consistent in its
views—it held that the statute did not create a new cause of
action, so holding, it logically held that the settlement of the
cause of action by the injured party barred any action by or on
behalf of his next of kin.   It is also worthy of note that the
syllabus prepared and printed with the opinion in the Read case,
and published the same year in which the opinion was written,
and which we should certainly expect would point out the chief
points in the opinion, whether prepared by the judges or not,
gives the following as the holding of the court upon the demurrer
to the plea of settlement by deceased :

"Held, that the cause of action was the defendant's negli-
gence, which had been satisfied in the deceased's lifetime, and
that the death of D. Read did not create a fresh cause of action."

In the light of the above, it is certainly strange that courts
holding that a statute such as the one before us does create a

new cause of action should cite the Read case as an authority in support of a proposition that is inconsistent with such holding.

Perhaps the most comprehensive discussion of the question before us found in any decision is that in the majority and minority opinions in Southern Bell Telephone Co. v. Cassin, supra—the majority opinion holding a settlement such as in the present case to be a bar, the minority holding that it is not a bar. It is worthy of note that the statute before that court provided that, in the action based upon the death of a husband or father, the jury's verdict is for the "full value of the life of the deceased, without deduction for his necessary and personal expenses"; a provision radically different from that in our statute. Repeatedly, throughout the majority opinion, are to be found references to this provision, and we feel that a reading of such opinion cannot but impress one that this peculiar provision had much to do in shaping the views of the majority upon the question of the public policy of allowing a recovery on behalf of next of kin after a settlement with the injured party; and it is very clear, from the reading of such majority opinion, that the majority's views on the question of public policy largely controlled its decision. We would note a few of what we deem weak positions taken in the majority opinion. The court says:

"If a release wipes out the wrong done by the defendant, and makes it as though no injury had been suffered, then upon the death of the injured party there would be no cause of action, just as though there had been no injury, and it would not be a question as to the right to maintain two concurrent suits, but as to the right to maintain any suit at all."

As indicated in the above quotation, the court took the view that the release by the injured party entirely removed the wrong done to the next of kin; and in another part of the opinion, when discussing the opinion of the same court in Ga. R. R. v. Fitzgerald, 108 Ga. 507, 34 S. E. 316, 49 L. R. A. 175, which was a case which did not in any manner involve the question now before us, but did involve the question of the right of plaintiff to introduce in evidence the admission of deceased in relation to the cause of the injury received by him, it noted that in the Fitzgerald case it was held that the surviving wife "is to be considered *in privity with her* husband, in so far as her right to

complain of the homicide is concerned. The court then held that, owing to this *privity*, the wife was bound, not only by any de- ￡ fense which the defendant might have interposed to the original claim of injury—that is, by anything in the nature of a defense which was precedent in time to or accompanying the claimed wrongful act, and which was the real point decided in the Fitzgerald case; but it also held that, owing to such "privity," she was bound by what her husband did *after the injury*, and in this connection said:

"To hold otherwise would be to say that the wife could be barred by what her husband said, but not by what he did; that she might be concluded by words, but not by money; that the evidence of her husband given in the suit for his personal injuries, might be used against her in a suit for his death, but that the more solemn judgment against him would not conclude her."

A mere reading of the above quotation shows the weakness of the position taken by the court wherein the court fails to distinguish between that which went to prove whether or not there ever existed a cause of action in favor of the husband and that which merely went to prove whether a cause of action once existing had been released. The wife's cause of action certainly rested upon proof that the husband once had a cause of action— that question was vital to her claim. An examination of the opinion in the Fitzgerald. case discloses that therein the wife was held bound by anything done by her husband owing to which a cause of action *never arose;* while in the Cassin case the court extended the "privity" entirely beyond the rule of the Fitzgerald case, by holding the wife bound by what her husband did after his cause of action *had accrued* in settling, not her, but his, cause of action. In the minority opinion, after exhaustively reviewing all the earlier decisions construing the statutes of such state, and among them the Fitzgerald case, it is said (the italicizing being ours):

"In other words, the right of a widow to recover is not because the death of her husband has been brought about by the act of some person, but his death must be the result of some act of commission or omission on the part of the defendant which the law would declare to be negligent, and under such circumstances that, had death not resulted, he would have been en-

titled to demand compensation. It is therefore clearly right that the widow should be deprived of her right to bring a suit if the deceased could have avoided the consequences of the defendant's negligence by the exercise of ordinary care, as well as in the case where the deceased had entered into a contract which had the effect of making the act of the defendant lawful as to him, and also in all of those cases where the facts and circumstances surrounding the killing, as well as those leading up to and preceding it, were such as to show either that the defendant had been guilty of no wrongful act, or that the deceased was the victim of his own folly in matter of contract, or of his carelessness in matter of conduct. All of the cases which we have cited above, being all we have been able to find in our reports dealing with the question under consideration, relate to some act done by the deceased prior to, or concurrent with, the injury which he received. When a person is injured by the wrongful act of another, a foundation is at once laid for a cause of action in favor of those entitled under the law to demand compensation for his death; and the moment that his death results from such wrongful act the cause of action is full and complete. *Nothing the person injured can say or do between the date of the wrongful act and his death* can defeat the cause of action for the homicide."

Again the majority say:

"To begin with, the English courts have held that Lord Campbell's Act created a new cause of action, and yet in the Read case, the first decision as to the effect of a release, it was pointedly held, that a plea of accord and satisfaction with the deceased in his lifetime was a good bar to an action by his legal representatives.' "

While we think the court in the Read case should have held that the statute created a new cause of action, yet we have seen that it was held therein, and so understood by the court that decided the Griffith case, that the Lord Campbell Act did not create a new cause of action. If the court in the Read case had held that the statute created a new cause of action, it is quite probable that they would have reached a different conclusion, one consistent with the idea that a separate and distinct cause of action had been created. We frankly admit our inability to

comprehend the force of reasoning in the following found in the majority opinion in the Cassin case:

"If his negligence in the act is imputed to her, should not also his conduct after the injury be imputed to her? In spite of all the recent statutes, 'the husband is still the head of the family,' his life is his own, his body is his own, and whatever right in that life the law gives to his wife must be subject to the superior right of the husband."

We apprehend no rule is sound that will not work both ways. The above words would read quite different if you substitute, as the party receiving the physical injury and settling therefor, the wife or the child, and, as the party suing for the injury caused by the death of such wife or child, the husband or father; we are inclined to the view that the learned judges would not have overlooked the weakness of this statement. The majority sums up its views in this remarkable statement:

"The substantial grounds on which the courts must hold that the husband's settlement bars the wife are based upon the fact that the wife's right in the life of her husband is subordinate to what he himself has done with his life; that, as his negligence is imputable to her, so his ratification and condonation of the wrong done him estops her; that his acceptance of payment ratifies the act, and admits that he has been made whole of his injury; that thereafter the defendant can say he has not harmed the husband, but that payment, like pardon, relates back to the original act, and makes it as though it had not been."

Let us substitute the word "wife" for "husband" and "husband" for "wife" in the above statement and then apply it either to the case of injury and death or to the supposed case, hereinbefore mentioned, of abduction of a wife; if the statement is good law it is properly applicable thereto. Suppose in the abduction case the wife has settled for the wrong done her, and the husband is suing the wrongdoer for the violation of his right to his wife's services; imagine a court saying:

"The ground upon which we hold the husband barred is based on the fact that the husband's right in the life of his wife is subordinate to what she herself has done with her life; as her conduct would be imputable to him, her ratification and condona-

15—Vol. 35, S. D.

tion of the wrong done her estops him; her acceptance of payment ratifies the act, and admits that she has been made whole of her injury; that thereafter the wrongdoer can say he has not harmed the wife, but that payment, like pardon, relates back to the original act, and makes it as though it had not been."

This certainly would be remarkable law. A reading of the majority opinion in the Cassin case can but convince one of the correctness of Elliott's statement, hereinbefore quoted, that "it is somewhat difficult to support the rule by logical reasoning;" and such a reading, we think, is sufficient to convince any person that such opinion is really based upon the majority's views as to what was and was not sound public policy.

In Hecht v. Ohio, etc., R. Co., 132 Ind. 507, 32 N. E. 302, the court said:

"It was certainly not the intention of the Legislature that, when the person guilty of the wrong has been once subjected to a suit by the injured party in his lifetime, and compelled to pay all of the damages resulting from the injuries sustained by the wrongful act, he should again be liable to an action in favor of the personal representatives of the injured party after his death, and be again compelled to respond in damages for the same act."

Sufficient comment on the above is to call attention to the fact that the "injured party" therein mentioned could not in his action, recover for those damages sustained by the next of kin through the *death* of the injured party, and therefore the wrongdoer could be "compelled (by such action) to pay all the damages resulting from the injuries sustained by the wrongful act." The bare statement of the proposition—that the injured party could sue and recover for damages which might result to third parties through the death of plaintiff—demonstrates the weakness, not to say absurdity, thereof. In Strode v. St. Louis Transit Co., 197 Mo. 616, 95 S. W. 851, 7 Ann. Cas. 1084, the court said:

"The general consensus of opinion seems to be that the gist and foundation of the right in all cases is the *wrongful act,* and that *for such wrongful act but one recovery should be had,* and that, if the deceased had received satisfaction in his lifetime,

either by settlement and adjustment or by adjudication in the courts, no further right of action existed."

The unsoundness of the foregoing is apparent. Why not more than one recovery for such "wrongful act"? Why this refusal to follow the ordinary rule that there may be recoveries for every legal injury occasioned by a wrongful act? In Louisville Ry. Co. v. Taylor, Adm'r, 135 Ky. 738, 123 S. W. 281, 27 L. R. A. (N. S.) 176, the court said:

"The rule that a personal representative cannot sue upon both causes of action is based upon the ground that the defendant committed a single wrong, the negligence or wrongful act which caused the injury, and that, while the law gives two remedies for the wrong, it was not contemplated that two recoveries should be had for one wrong."

There are not "two remedies for one wrong," there is one remedy for each of two wrongs—one a wrong to the party who afterward dies, the other a wrong to those who survive. In Holton v. Daly, 106 Ill. 131, the court, in speaking of the right of personal representatives to bring two actions—one based upon a statute providing for the survival of the common-law action, the other based on a Lord Campbell Act—said:

"It is not to be presumed that it was intended there should be two causes of action, in distinct and different rights, by the same party plaintiff, for the same wrongful act, neglect, or default. * * * It is true the measure of recovery in the different cases is not the same, but the cause of action is, viz., the wrongful act, neglect, or default."

Here, again, we see a court failing to distinguish between a "cause of action" and one single element of such cause of action.

The above quotations are fairly representative of the statements found in all those opinions wherein conclusions are reached which are inconsistent with our views. How much more consonant with reason is the following from the opinion in Mahoning Valley Ry. Co. v. Van Alstine, supra:

"It is insisted, further, that the theory of two causes of action will necessarily result in the assessment of double damages, at least in part, and this is emphasized by the learned judge who delivered the opinion in Holton v. Daly, 106 Ill. 131. We are

not able to perceive that this, in practice, would prove a very serious situation. At least the eminent jurist who presided in the common pleas at the trial of the revived action seemed to have no difficulty in giving to the jury a rule as to damages which, as it seems to us, would not embarrass the question of a proper rule of damages to be given the jury upon the trial of the second action. The objection is a plausible one. We are not impressed that it is sound. At least it cannot avail if the right to a second action where death results from the injuries is given by the statute."

In Burk v. Arcata & Mad River R. R. Co., 125 Cal. 364, 57 Pac. 1065, 73 Am. St. Rep. 52, it was said:

"Under our statute, the injured person might survive long enough to sue and recover damages or to settle with the wrong-doer, and then by his death a new cause of action would accrue to his heirs."

In Brown v. C. & N. W. Ry. Co., supra, it was said:

"The action for a death loss to a surviving relative is not a right by survivorship to the claim which existed in favor of the injured person in his lifetime."

The following words of Justice Brewer found in Hulbert v. Topeka (C. C.) 34 Fed. 510, are worthy of careful consideration:

"Section 422 [the homicide section (Comp. Laws 1879)] gives a new right of action—one not existing before; an action which is not founded on survivorship: an action which takes no account of the wrong done to the decedent, but one which gives to the widow or next of kin damages which have been sustained by reason of the wrongful taking away of the life of the decedent. It makes no difference whether the injured party was killed instantly, or lived months; whether he suffered lingering pain or not; whether or not he was put to any expense for medical attendance and nursing. None of these matters are to be considered in an action under section 422; and the single question is: How much has the wrongful taking away of his life injured his widow or next of kin? It is an action to recover damages for the death, and in no sense a survival of an action which * * * the decedent himself had in his lifetime."

In Littlewood v. Mayor, supra, the court said:

"There can be no doubt that the Legislature had power to

create the double liability contended for, nor would it necessarily involve any inconsistency. The damages of the party injured are different and distinguishable from those which his next of kin sustained by his death, and no double recovery of the same damages would result."

In Pittsburg, C., C. & St. L. Ry. Co. v. Hosea, Adm'r, supra, it is said (the italics being ours):

"Whatever may be said with respect to the power of the intestate to contract away his right of action against the appellant, *he surely had no power to bargain away his family's right of action given by statute* against the one wrongfully causing his death."

We close in the words of the court in Maney v. Railway Co., supra:

"Neither argument nor authority would seem to be necessary to sustain the view that the widow and next of kin cannot be deprived of the property right so created and vested in them at the will or pleasure or by the contract of another, though he be the party charged with the performance of duties out of which the right grew."

The order appealed from is affirmed.

SMITH, J. (dissenting). The majority opinion frankly concedes "that a large number, and perhaps a majority, of the cases wherein this precise question was under consideration" have held contrary to the conclusions announced in that opinion. With equal frankness it affirms that:

"One case backed by reasoning that is cogent may be sufficient to outweigh any number of opinions wherein the argument, even though forcible, lacks that convincing power that forces conviction."

We are to assume, therefore, that the majority opinion presents such cogent reasoning. It seems to me, however, that it affords an illuminating example of an argument to show what a court thinks the law ought to be, rather than a satisfactory demonstration of what it is. The reasoning intended to show two distinct "causes of action" under our statute is founded on an assumed elementary principle—the right of the wife to the husband's support. It is said to be a duty resting upon every person not to deprive the wife of the husband's support, and

upon this is based the legal conclusion that, whenever the right of the wife to the husband's support is violated by the wrongful act of a third person, such act should create a right of action in the wife. The *assumption* in the reasoning is that any negligent and wrongful injury to the husband which lessens the support of the wife should give her a cause of action, and that we must presume it was the legislative intent, in changing the common-law rules, to confirm in her a separate right of action for every diminution of her means of support arising from a wrongful injury to the husband. The fallacy lies in the assumption that the legislation under discussion was intended to create such a right of action in the wife. Neither at common law nor by legislation does such right exist, nor ever has existed in this state, except for injury to support caused by unlawful sales of intoxicating liquors. For all personal injuries the right of action for any injury which affects the ability of the husband to support the wife exists only in the injured husband himself, so long as he is living, and the wrongdoer who compensates the husband places in his hands the means of support of which the wife is potentially deprived by the wrongful act, and no legal liability to her has ever existed. The marital obligation for her support creates a conclusive legal presumption that he will apply such damages received by him, as he will his earnings and other property, for her support, and that she is thus compensated. These statutes were never intended in any degree to affect the legal rights of the wife or to limit the control of the husband over his property or his choses in action while living, and no act of his while living which was valid when done, no matter in what degree it may be thought to affect the support of the wife, was ever intended to be invalidated or rendered ineffective by these enactments. To assume the contrary as a legislative intent would be to presume that a Legislature would intend or undertake to say that every *transfer* or *loss* of *property* by the husband in his lifetime which would affect the future support of his wife should be declared ineffective.

It seems to me that a good many decisions of other courts, as well as the majority opinion in this case, present a somewhat confused interpretation of these statutes, which were enacted only for one distinct purpose, viz., that of abrogating two rules

which became incorporated in the ancient common law: First, "that the death of a human being cannot be complained of as a civil injury for which damages are recoverable in a court of law;" and, second, "that a right or cause of action which belonged to an injured person while living was extinguished by his death." Denunciation of these ancient rules may add somewhat to our appreciation of our own modern wisdom, but it serves no real purpose in the discussion of these statutes. Those rules, however, must necessarily be considered in the interpretation of these statutes, and the objects sought to be accomplished by their enactment. The character and effect of particular statutory changes in the common-law rules referred to in our own state, and in other states, should be our guide in the interpretation of such statutes. It seems to me that nearly all the fallacies of reasoning and conflicting views found in the decided cases arise from a total or partial misconception of the real purpose of this class of legislation. It was not its purpose to enlarge or change any existing law which made it the duty of the husband to support the wife, nor to change the law which gave her the legal right to demand support from him. It was not intended in any degree to change or limit the husband's control during his lifetime of property or choses in action which might ultimately be devoted to her support. It was intended only to secure to her that which, under common-law rules, she would have lost upon the happening of his death. The statutes, I think, should be construed, as many courts have construed them, merely as intended to authorize a recovery of damages after the death of the husband for a previously uncompensated injury to the husband's earning capacity. It must be conceded that the reasoning and logic in many of the decided cases is unsatisfactory, and subject to criticism. This, I think, is due largely to a misconceptoin of what constitutes the cause of action, and because, as said by Justice WHITING, some courts have failed "to distinguish between a cause of action and one single element of such cause of action." All of these statutes, however, no matter what their phraseology, were primarily intended to accomplish a single purpose—the abrogation of the common-law rules which inhibited a civil remedy in damages for a wrongful death, or for personal injuries which later resulted in death. They all deal with condi-

tions which arise after the death of the person injured. The right of action, under all the statutes, must therefore necesarily be vested in a third person, either the personal representative for the benefit of the estate, or for the benefit of particular persons named in the statute, or given to particular beneficiaries, such as the wife or children.

The statutes, when carefully analyzed, differ chiefly as to the person who may bring the action and the date when the damages accrue or from which they are computed, or the kind of damages recoverable. Some statutes permit recovery of the identical damages the deceased himself might have recovered, with added pecuniary damages to the wife or family resulting from the death. Others permit a recovery by the personal representative for the benefit of the *estate* of such damages as the deceased himself might have recovered, and also permit a further recovery by the wife or personal representative of damages to her support which follow and are the result of the death. Other statutes ignore the intervening damages, and permit a recovery only for the damages to the wife's means of support which result from the death itself. The various statutes differ essentially only as to the persons in whom the right of action is vested after death and the kind and measure of damages which are recoverable. In every instance and under all the statutes, "the cause of action" is the wrongful personal injury. No one doubts a single wrongful act may result in separate and distinct injuries to two or more separate and distinct persons or rights, and that either of such injured persons may maintain an action for his own distinct damage. Nor will any one deny the power of the Legislature to split the total aggregate damages resulting from a wrongful injury to the husband by giving a part to the estate and a part to the wife. But I think no one will assert that legislative power exists to require the wrongdoer, first, to pay the total aggregate damages to the estate, and, again, to pay the total aggregate damages to the wife. The controlling principle is that, when the wrongdoer has once paid the agreed, or legally ascertained, total damages, to the person entitled to receive the same at the time such payment is made, the original wrongful act is fully satisfied and the right of action therefor extinguished. The husband, during his lifetime, is and must be deemed com-

petent to place a valuation upon his own services as a means of support for his wife and family, and this, not because, as suggested in certain decisions, the wife is privy to his acts, but because the law deems him competent in his lifetime to safeguard and protect all her rights, in the exercise of his duty of support. Some of these statutes which permit a recovery of the same damages the deceased would have had in his own favor had he survived his injuries go no further than to abrogate one rule of the common law, viz., that a right of action for personal injuries is *extinguished* by the death of the injured person.   Under these statutes, the damage to the estate or beneficiaries which result from the death itself are not recoverable.   Another class of statutes ignore certain elements of damage which the deceased in his lifetime might have recovered, such as expenses of nursing, medical attention, and solatium, and permit only a recovery equal to the pecuniary loss of support sustained by the beneficiaries by reason of the death alone.   Some courts have construed the latter class of statutes as creating a new cause of action for the death. This is wholly wrong.   The common-law rule was that, although a criminal or negligent act which caused death was tortious and wrongful, yet the damage which might flow therefrom was not recoverable in a civil action.

The origin of this rule and the reasoning upon which it was founded are both obscure, though the rule itself comes down from ancient times.   Some law writers have surmised that it had its origin in the idea that a man could not have damages for his own death.   The justice of this rule however, came to be questioned later, when it was recognized that a wrongful act which caused death might occasion injury, through the death itself, to the estate of the decedent, or to those dependent upon him for support.   It thus became apparent that the common-law rule should be changed, and a rule for estimating damage flowing from the wrong, either to the estate or to third persons, should be established and fixed by law.   This was done by the Lord Campbell Act, about 70 years ago, and this act was followed in almost every jurisdiction where the English common law prevailed, by statutes similar in their purpose to the original act, but varying as to the rule of damages and the persons who might maintain an action therefor.   But the wrongful act which

caused the death has always been recognized as the cause of action, though the damages are to be measured by the consequences flowing from the act, or the death itself. In some jurisdictions where a period of time intervened between the injury and the death, the damages which the injured person might have recovered in his lifetime are added to the damages flowing from his subsequent death, and the total damages may be recovered in a singe action. In other jurisdictions the intervening damage is given to the estate, and the damage flowing from the death to specific beneficiaries; while in still others the common-law rule that the right of action is extinguished by death is modified only to the extent of allowing a recovery of the damage flowing directly from the death itself. The Lord Campbell Act has been so construed by the Illinois courts (Prouty v. City of Chicago, 250 Ill. 222, 95 N. E. 147), although, under other statutes of that state, it is held that, where the injured person *dies from another cause than the injury,* the cause of action for damages which accrued prior to the death survives to the administrator (Holton v. Daily, 160 Ill. 131; Devine v. Healy, 241 Ill. 34, 89 N. E. 251; Chicago & E. I. R. Co. v. O'Conner, 119 Ill. 586, 9 N. E. 263).

There is no rule of law, statutory or otherwise, based on the theory that the wife is entitled to the benefit of the *whole,* and not a part, of the husband's earning capacity, which gives the wife a separate right of action against the wrongdoer, where the husband, in his lifetime, chooses to accept in settlement of his personal injuries an amount less than the full actual damages to his earning capacity. There may be those who think this *ought to be the law,* but it is not at the present time. The only safe judicial method is to follow the law as it is until such time as some "cogent reasoning" shall move the legislative wisdom to enact other laws. If the husband has the absolute right, during his lifetime, to settle and accept compensation for personal injuries to himself, *the extent of such injuries* is wholly immaterial. He may know that the injuries he has received will totally disable him for life, and that he may become utterly useless to himself and family, a condition worse than death, in so far as it affects the wife's right to his support, but so long as he lives his legal right to settle with the wrongdoer will not be

·denied. He may even know that he will die as a result of such injuries, and yet no law exists which deprives him of the legal right to estimate the damages, and to make settlement for the injury, even if it be conceded that such settlement involves the wife's means of support. The law gives him the absolute right to do that which he deems wisest and best, both for himself and his wife or his estate, so long as he lives, and is mentally capable of exercising the right. So long as he lives, the law does not consider her right of support and his right to settle for an injury to himself as two distinct things. They are so correlated as to be inseparable. It would be idle to discuss the wisdom or justice of legislation which might require the wife's right to future support to be taken into account when settlements are made in his lifetime for personal injuries to the husband. We need only observe that at the present time the law does not require it, no matter what may be the extent of the injury. But a wholly different situation is presented when the husband has been wrongfully injured, and death ensues as the result of such injuries, *the husband not having been compensated in his lifetime.* In such cases, the ancient rules of the common law left the wife helpless indeed. She could not sue for the loss of support by reason of his death, nor on the right of action the husband himself had against the wrongdoer, for that was extinguished by his death. It was precisely this situation which the Lord Campbell Act sought to remedy, by changing the common-law rules, and, when properly interpreted, it goes no further. It was intended to allow her that which, prior to his death, she had not, but might have received through her husband had he lived, for the total loss of his earning power, viz., damages. To accomplish this no change in existing common law was necessary, save only a change in the two rules which would become operative by reason of the death, and would render the wrongdoer immune from an action in the law courts. The measure of damages recoverable may be defined with reasonable certainty when the Lord Campbell Act is thus construed. It was intended to secure to her that which the husband had neglected or failed to obtain for her in his lifetime. When the husband had not himself in his lifetime estimated and accepted, or caused to be liquidated, the damages, the act gave her the right to maintain an action for

complete liquidation of the damages which he had not received, and which upon his death, of right, ought to belong to her, and the act carefully provides that the total *pecuniary injury to her means of support by reason of his death* shall be her rule of damages. But endless difficulties arose when an attempt was made to determine a rule of damages to be applied where the deceased had made settlement or recovery in his lifetime. It is just at this point that all the conflicting views of courts arise. The numerous quotations from decisions found in the majority opinion show how diverse and irreconcilable are the views of courts as to the purposes and effect of this legislation, and I venture the suggestion that it arises from an unnecessary assumption either that these statutes create a new cause of action, or that they are survival statutes. The truth seems to be that a conviction arose in the minds of men, first, that a right to damages for a personal injury which caused death should exist, and that it ought not to become unenforceable because of the death of the injured person. Then, viewing the situation *after death,* the question would arise:

"If the right to recover damages for an uncompensated fatal injury is to be given to the wife, children, or estate, what should be the *measure of damages?*"

The answer seems to have been that the wife or children should be given damage equal to both the loss of support which the deceased husband himself might have recovered and devoted to their use had he lived, and also the additional pecuniary loss they sustained by reason of his death, and which he might have contributed to them had he survived the injury. The thought was that the "cause of action" already existed, and that it was only necessary to define the damages, both in extent and character, which were to be saved from extinction by reason of the husband's death. This rule of damages could be made applicable as well where death was instantaneous, because it was intended to cover the whole pecuniary value of his earning capacity, as a means of support to his wife, or as an increment to the estate. This is described in the statute as the "pecuniary" loss or injury by reason of the death. Some courts have viewed this rule of damages as a "new cause of action" created by statute. No wonder, when one court insists that these acts are survival statutes, and another that a rule of damages creates a new "cause

of action" never heard of before, that there should be conflict of
decision, lame reasoning, hair-splitting distinctions, profound and
abstruse definitions of terms, and almost hopeless confusion. And
this in face of the fact quite universally conceded by the courts
that the Lord Compbell Act was conceived and enacted only
because of, and to aborgate, the two common-law rules referred
to above, as is shown by the criticism of those ancient rules in the
majority opinion, and in the elaborate quotations from certain
courts. The fact is that these statutes were enacted for only one
purpose, and were not intended or designed to change any right
of the husband to deal in his lifetime with his property or choses
in action, no matter in what way or to what extent his exercise
of that right might affect the wife's means of support or the
value of his estate. It must follow therefore, that when, in his
lifetime, he has estimated and received compensation for the in-
jury, the cause of action is extinguished, and no right of action
remains to be exercised by his dependents or personal representa-
tives.

The law in force in this state (chapter 301, Laws 1909) pro-
vides that the wrongdoer "shall be liable to an action for dam-
ages, not withstanding the death of the person injured," and that
the damages may be "proportionate to the pecuniary injury re-
sulting from such death, to the persons respectively for whose
benefit such action shall be brought." The statutes of 21 other
states are similar to our own in that damages are recoverable
"notwithstanding the death." See memoranda at close of Judge
Gates' opinion. In some of these states coexisting statutes are
deemed to affect the interpretation of the clause of the statute
above referred to. In this state no such statutes exist. Our
statute is the original Lord Campbell Act, and so eminent a
jurist as Mr. Justice Cooley, speaking of that act, says:

"It is seen on a perusal of this statute that it gives an ac-
tion only when the deceased himself, if the injury had not re-
sulted in his death, might have maintained one. In other words,
it continues for the benefit of the wife, husband, etc., a right of
action which at the common law would have terminated at the
death, and *enlarges its scope to embrace the injury resulting from
the death*. If, therefore, the party injured had compromised for
the injury and accepted satisfaction, previously to the death,

there could have been no further right of action, and consequently no suit under the statute."

This is exactly the interpretation given the Lord Campbell Act in the first case arising under it in the English courts. In the case of Reed v. G. E. Ry. Co., L. R. 3 Q. B. 555, the surviving widow sued the railway company for negligence whereby her husband was injured, of which injuries he died. The defendant pleaded that in the deceased's lifetime he had been paid, and had accepted, a sum of money in full satisfaction and discharge of all premises and causes of action against the defendants. The court held that the cause of action was the defendant's negligence, which had been satisfied in the deceased's lifetime, and that the death of the husband did not create a fresh cause of action. Commenting on section 2 of the act, which prescribes the damages, the court said:

"This section may provide a new principle as to the assessment of damages, *but it does not give any new right of action.*"

In Louisville Ry. Co. v. Taylor, 135 Ky. 738, 123 S. W. 281, 27 L. R. A. (N. S.) 176, under a similar statute, the ruling of the English court in the Read case was followed. The court said:

"The plain purpose of the act of 1854 [Acts 1853-54, c. 964] was simply to do away with the common-law holding that no recovery could be had when death resulted immediately. * * * If, notwithstanding the settlement, the representative of the decedent may recover in this action, he might equally recover if the decedent had brought a suit and recovered a large sum for his injury before his death. The amount of the settlement is not material, except as the amount paid may throw light on the good faith of the settlement"—citing a large number of decisions sustaining the rule.

In the note in the latter case found in 27 L. R. A. (N. S.) the learned annotator, at page 176, says:

"Without reference to the question of the construction placed upon statutes in substance similar to Lord Campbell's Act, as to whether such statutes give an independent cause of action, the general rule is that such action can only be maintained under circumstances such as would entitle the injured person in his lifetime to have maintained it; and he may, subsequent to the

injury, settle with the tort-feasor for the damages caused him thereby, and such settlement is a bar to any subsequent action by his widow, next of kin, or personal representative for his death because of such injuries, unless there is fraud or duress in procuring the settlement."

In Strode v. St. Louis Transit Co., 197 Mo. 616, 95 S. W. 851, 7 Ann. Cas. 1084, the court said:

"The general concensus of opinion seems to be that the gist and foundation of the right in all cases is the wrongful act, and that for such wrongful act but one recovery should be had, and that, if the deceased had received satisfaction in his lifetime, either by settlement and adjustment or by adjudication in the courts, no further right of action existed."

In Littlewood v. Mayor, etc., 89 N. Y. 24, 42 Am. Rep. 271, under a statute identical with our own, Rapallo, J., said:

"I can find nothing in the act of 1847 or the amendments of 1849 and 1870 manifesting an intention to impose the liability in question, where the deceased has in his lifetime recovered compensation for his injuries. The act has made an important change in the common law, in affording a remedy in cases where the death would have protected the wrongdoer against any recovery whatever; and in holding it applicable to such cases only we think that all is accomplished that the Legislature intended. The argument in favor of the construction contended for on the part of the plaintiff is based largely upon the provisions relating to the damages to be recovered and the disposition to be made of them. Some provisions on those subjects were necessary by reason of the novelty of the action, and such have been adopted as were deemed most appropriate, but they should not control the construction of that part of the statute which imposes the liability, or extend it beyond the fair import of its terms."

In Meekin v. Brooklyn Heights R. Co., 164 N. Y. 153, 58 N. E. 50, 51 L. R. A. 235, 79 Am. St. Rep. 635, that court held that the measure of damages is the *pecuniary loss* of the beneficiaries designated by the statute, and that the suffering of the deceased cannot be considered. This ruling was approved in Mich. Cent. R. Co. v. Vreeland, 227 U. S. 70, 33 Sup. Ct. 192, 57 L. Ed. 417, Ann. Cas. 1914C, 176; Lindstrom v. International

Nav. Co. (C. C.) 177 Fed. 173; Titman v. N. Y., 57 Hun, 473, 10 N. Y. Supp. 689.

The relationship between alimony in a divorce action and damages recoverable under the Lord Campbell Act, I think, may be considered an original discovery, and as having been first announced in the majority opinion. The principle might be stated thus: The court compels the husband to pay alimony to the wife for her support while the husband is still living. The Lord Campbell Act requires the wrongdoer to pay the wife alimony in the form of damages after the husband is dead. But what would be the situation if the wrongdoer, prior to the husband's death, had paid to the husband the entire alimony or damages, thus passing over to the husband the means of support or of alimony due from the wrongdoer? Would the court deny the wrongdoer the right to place such money in the husband's hands, lest, perchance, it should be dissipated or be insufficient in amount, and the wife thus lose her alimony or support? If the court so holds, it is easy to see that the Lord Campbell Act should have gone directly to the point and declared that, when a wrongful act resulted in the death of the husband, the wrongdoer should thereafter be required to support the wife. If this is the principle underlying the act, it must be conceded it was badly framed to accomplish that purpose. The majority opinion, however, goes further, and asserts that the husband cannot release a "cause of action" which has not then accrued, which may never accrue, which from its very nature cannot accrue until his death, which, if it ever does accrue, is in favor of the wife ,and is based solely upon the violation of a right vested in the wife. This statement is an epitome of all the false premises assumed in the minority decisions. It ignores the fundamental distinction plainly pointed out in the majority opinion itself between the "cause of action" and the "right of action." The "cause of action" accrues when the wrongful injury is inflicted upon the husband, the "right of action" becomes vested in the wife upon the happening of his death, and the measure of her damages is the pecuniary value of the loss of support resulting from the death. But where, during the lifetime of the husband, he has received damages in full satisfaction of the "cause of action"—the wrongful injury—no "right of action" can, or ever

does, accrue in favor of the wife. In short, the Lord Campbell Act gives the wife a "right of action" to recover pecuniary damages for a wrongful injury to the husband resulting in his death, and not compensated during his lifetime.

The majority opinion rests upon its own special reasoning, and admits that its conclusion is contrary to the views of "a large number, and perhaps a majority, of the cases." But the learned annotator in the Taylor case, 27 L. R. A. (N. S.) 176, goes still further, and unqualifiedly states that:

"The cases, however, are substantially in·accord as to the effect of a settlement by an injured party for injuries which thereafter cause death, on the right of his personal representative or widow or next of kin to maintain an action for his wrongful death caused by such injury."

This statement by so careful and eminent an authority would seem to render a further citation or discussion of decided cases unnecessary. Very "cogent reasoning," indeed, is required to overturn the practically unanimous decisions of all the courts that the settlement or recovery of damages in the lifetime of the injured person satisfies the wrongful injury.

GATES, J. (dissenting). The minority decisions which Judge WHITING relies upon as containing the more cogent reasoning are: (a) Either from states whose statutes differ fundamentally from the real Lord Campbell Act; or (b) if from states having substantially that act, the courts base their arguments upon decisions from states where the *cause of action* is assumed to be *for death*, or upon the effect which other more or less related statutes have upon the proper solution of the issue. It is not logical to call to one's aid the decisions of courts of those states, where undoubtedly a new and independent right of action is given, such as Indiana and California, for instance, to support one's argument that the real Lord Campbell Act gave a new and independent cause of action for death. It is true, as pointed out in the majority opinion, that section 3 of our act authorizes the jury to "give such damages, not exceeding in any case $10,000, as they may think proportionate to the pecuniary injury resulting from such death." It is also true that the real Lord Campbell Act contained the following similar language:

16—Vol. 35, S. D.

"The jury may give such damages as they may think propor-
tioned to the injury resulting from such death." But the dis-
tinction I desire to emphasize is that in our statute, as in the
original Lord Campbell Act, the cause of action that accrued to
the husband is continued *notwithstanding* his death, and no new
cause of action is given. It is not the death which is the cause
of action, but it is the negligence which caused the death that is
the cause of action, and the death is material only as it relates
to the damages which may be recovered. Cooley on Torts (2d
Ed.) 309.

In the majority opinion the following decisions are cited
and sometimes quoted from in support of the conclusion arrived
at. Maney v. C., B. & Q. R. Co., 49 Ill. App. 105, is a decision
by the intermediate Appellate Court of Illinois. It conflicts with
Holton v. Daly, 106 Ill. 131, which decision was reaffirmed in
Mooney v. Chicago, 239 Ill. 414, 88 N. E. 194, 17 years after
the Maney decision. Whitford v. Panama R. Co., 23 N. Y. 465,
was overruled so far as the question at issue in the present case
is concerned by Littlewood v. Mayor, 89 N. Y. 24, 42 Am. Rep.
271.

The majority opinion quotes from Mahoning Valley R. Co.
v. Van Alstine, 77 Ohio St. 395, 83 N. E. 601, 14 L. R. A. (N.
S.) 893, and Brown v. C. & N. W. R. Co., 102 Wis. 137, 77 N.
W. 748, 78 N. W. 771, 44 L. R. A. 579. In both of these the
decision in Robinson v. C. P. R. Co. (1892) App. Cas. 481, was
given great weight. The fact is that decision, although a House
of Lords decision, arose under the Quebec statute hereinafter
cited, and which, as their Lordships pointed out, is not the Lord
Campbell Act. The Wisconsin decision strongly intimated that
a settlement with the injured person would be a bar to the later
action. Putman v. So. Pac. Co., 21 Or. 230, 27 Pac. 1033, is
an Oregon decision based upon a statute unlike ours. Mo. Pac.
R. Co. v. Bennett's Estate , 5 Kan. App. 231, 47 Pac. 183, and
Hulbert v. Topeka (C. C.) 34 Fed. 510, arose under the Kan-
sas statute, which is not the Lord Campbell Act. Hurst v.
Detroit City Ry. Co., 84 Mich. 539, 48 N. W. 44, is a Michigan
decision. In Sweetland v. C. & G. T. R. Co., 117 Mich. 329, 75
N. W. 1066, 43 L. R. A. 568, the court said the language in the
Hurst case about there being two rights of action was dictum.

Bowes v. City of Boston, 155 Mass. 344, 29 N. E. 633, 15 L. R. A. 365, did not arise under the Lord Campbell Act. The decision in that case was to the effect that the right of action under section 18, c. 52, Pub. St. Mass. 1882, was independent of the right of action under section 17 of said act. Burk v. Arcata, etc., R. Co., 125 Cal. 364, 57 Pac. 1065, 73 Am. St. Rep. 52, and Pittsburgh, C., C. & St. L. R. Co. v. Hosea, 152 Ind. 412, 53 N. E. 419, arose under statutes that are similar to the Oregon and Kansas statutes.

What seems to me to be the fundamental fallacy of the majority opinion is demonstrated by the illustration of the bullet. I do not apprehend that, if the collapse of the wall which caused the injury to plaintiff's husband had also physically injured the plaintiff, appellants would for a moment contend that the settlement with the husband would have been a settlement of the plaintiff's cause of action for her own physical injuries. The injury to plaintiff in this case arises from the same act of negligence, but it accrues to plaintiff by reason of, and through, the injury to the husband, for which a full and complete settlement was made.

I think we erred in the former decision in this case (32 S. D. 66, 142 N. W. 664) when we said that there were two causes of action, and that "neither is the prosecution or satisfaction of either a bar to the prosecution and recovery on the other." That error ought now to be corrected.

I concur fully with the views so ably expressed by Judge SMITH.

Statutes which are the same, in substance, as the Lord Campbell Act in that they preserve the right of action notwithstanding death: Arkansas, section 5225, Mansf.; Colorado, Mills' Ann. St. 1912, section 2178; Florida, Gen. St. 1906, § 3145; Illinois, section 1, c. 70, Rev. St. 1885; Maine, Rev. St. 1903, c. 89, § 9, p. 784; Maryland, Pub. Gen. Laws 1888, p. 1020, art. 67, § 1; Michigan, Howell's Ann. St. 1882, § 8313; Mississippi, Code 1880, § 1510; Missouri, Rev. St. 1909, § 5426; Nebraska, Cobbey's Ann. St. 1911, § 5199; New Jersey, Comp. St. 1910, p. 1907, § 7; New Mexico, Comp. L. 1897, § 3214; North Carolina, Revisal of 1905, § 59; North Dakota, Rev. Codes 1905, § 7686; Ohio, Rev. Statutes 1890, § 6134; Rhode

Island, Gen. Laws 1909, c. 283, § 14, p. 998; South Carolina, Civ. Code 1912, § 3955; Vermont, Statues 1894, § 2451; Virginia, Code 1887, § 2902; West Virginia, Code 1899, c. 103, p. 774, § 5; Wisconsin, Rev. St. 1878, § 4255; Wyoming, Comp. St. 1910, § 4291.

Statutes which in terms provide for an action for death or otherwise differ from the Lord Campbell Act: Alabama, Code 1907, § 2486; California, C. C. P. § 377; Connecticut, Gen. St. 1902, § 1094; Delaware, Rev. Code 1852 amended to 1893. p. 788 (13 Del. Laws, c. 31); Dist. of Columbia, Comp. St. 1887-89, p. 397; Georgia, C. C. 1895, § 3828; Idaho, Rev. Codes, § 4100; Indiana, Burns' Ann. St. 1894, § 284; Kansas, C. C. § 422 (Gen. St. 1909, § 6017); Kentucky, Ky. St. § 6; Minnesota, Gen. St. 1913, § 8175; Montana, Ann. Code Civ. Proc. § 579 (Rev. Codes, § 6486); Nevada, Rev. Laws 1912, § 4997; New Hampshire, Pub. St. 1891, §§ 8-13, c. 191, p. 535; New York, section 1902, C. C. P. (vol. 1, Birdseye's Stat. p. 859); Oklahoma, Comp. L. 1909, § 5945; Oregon, Lord's Oregon Laws, § 380; Tennessee, Code 1884, § 3130; Texas, Vernon's Sayles' Civ. St. 1914, §§ 4694-4704; Utah, Comp. L. 1907, § 2912; Washington, 2 Hill's Ann. St. § 138; Quebec, C. C. Lower Canada, § 1056.